## PEOPLE v PEPPER

1. HOMICIDE—ACCIDENTAL HOMICIDE—EXCUSABLE HOMICIDE—FIRST-DEGREE MURDER—MANSLAUGHTER—INTENT—PRESUMPTIONS—INSTRUCTIONS—APPEAL AND ERROR.

   Defendant charged with first-degree murder, though persistently contending that the decedent met his demise as a consequence of accident, did not have the benefit of such theory embodied in the trial court's jury instructions where the trial court failed to explain the legal ingredients of excusable homicide and committed error, requiring reversal of defendant's conviction of manslaughter, in instructing the jury that it could presume that defendant's unlawful act was done with unlawful intent (MCLA 750.316).

2. HOMICIDE—ACCIDENTAL HOMICIDE—FIRST-DEGREE MURDER—INTENT—PRESUMPTIONS—INSTRUCTIONS—APPEAL AND ERROR.

   Instructions, when read as a whole, did not present to the jury all the law of the case where defendant was charged with first-degree murder; under the facts presented the instructions on intent were erroneous as given; they focused upon intent regarding the consequences of the act and never even considered the intent to do the act itself; and defendant's theory of defense was not addressed to intent to kill, but rather that the shooting was accidental, however, this element became the subject of presumption under the instructions as given (MCLA 750.316).

3. CRIMINAL LAW—INSTRUCTIONS.

   Defendant was entitled to have all the elements of the crime submitted to the jury in a charge which was neither erroneous nor misleading.

Appeal from Court of Appeals, Division 1, J. H. Gillis, P. J., and R. B. Burns and Levin, JJ., affirm-

REFERENCE FOR POINTS IN HEADNOTES

[1–3] 40 Am Jur 2d, Homicide §§ 498, 499.

ing Recorder's Court of Detroit, George W. Crockett, Jr., J. Submitted October 3, 1972. (No. 4 October Term 1972, Docket No. 53,803.) Decided April 26, 1973.

36 Mich App 437 reversed.

Jodie Pepper was convicted of manslaughter. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Gerard A. Poehlman,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *James R. Neuhard),* for defendant on appeal.

T. M. KAVANAGH, C. J. During the late morning of November 29, 1969, defendant, the decedent and a group of friends gathered at Early Porchia's apartment where they were engaged in drinking.

Apparently at some point as defendant, decedent and two others were about to leave, defendant confronted decedent with a gun. A verbal exchange ensued, the essence of which was an accusation or intimation that decedent was having an affair with defendant's girlfriend. General argument followed and as they all reached the porch the gun which defendant held discharged, fatally wounding Frank York. Defendant indicated that that particular gun could be and often had been fired just using the hammer. His defense was that

the shooting had been accidental, claiming he was only handing the gun to decedent who was to sell it for him.

Defendant was charged with first-degree murder. A jury trial resulted in a verdict of guilty of manslaughter. The Court of Appeals affirmed, LEVIN, J. dissenting. 36 Mich App 437 (1971). We granted leave to appeal. 386 Mich 785 (1972).

On appeal, defendant raises three issues, all claiming instructional errors.

1. Did the trial court err in instructing the jury that it could presume that defendant's unlawful act was done with unlawful intent, where the defense was accident?

2. Did the trial court err in instructing the jury on manslaughter where the prosecutor argued premeditated murder and the defense argued excusable homicide?

3. Did the trial court err in its supplemental instructions to the jury by misleading them and coercing a verdict?

Defendant's first issue is that which requires reversal of his conviction. Though persistently contending that the decedent met his demise as the consequence of accident, defendant did not have the benefit of such theory embodied in the trial court's jury instructions. It appears that the only "defense" as such explained to the jury was self-defense. And it appears that even it was removed from the jury's consideration.

Though the fifth of the five enumerated essentials of the people's case was that defendant had not acted in self-defense, the court later stated in a supplemental instruction that, "Now as I recall the testimony, you need not even concern yourself with number 5. There is no claim here that there was self-defense."

True, justifiable homicide was never raised in the case, but excusable homicide was.

The failure of the trial court to explain the legal ingredients of excusable homicide set the stage for the second error which had the cumulative effect of assuring defendant's conviction. Having determined the jury was in need of further clarification on the element of intent, the trial court gave the following supplemental instruction:

"Something has been said about intent in this case, and as bearing upon that question, I say to you that where an unlawful act is done, the law presumes it was done with an unlawful intent.

"Intent, except when confessed, is a matter of presumption. Intent, unless confessed, can only be proved by acts, as jurors cannot look into the breast of the accused. And where an act is knowingly committed, it naturally leads to certain consequences, and a jury has a right to draw the inference, as they draw all other inferences, from the facts in evidence which to their minds fairly proves its existence.

"If the direct tendency of a man's willful act is to produce injury and injury is in fact produced, the intent to produce it is in law deducible from the act itself, for the law presumes that every person intends the usual consequences which accompany the use of the means employed in the manner employed."

· The above quoted instruction was taken from 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 906, Form 338, p 1244.

This instruction is a composite of language from the opinions in *People v Carmichael,* 5 Mich 10, 17 (1858); and *People v Scott,* 6 Mich 287, 296 (1859). The *Carmichael* case involved a charge of mingling a poison with food with intent to injure. Defendant Carmichael had claimed no intent to injure, only an intent to stimulate the victim's animal passions

in order to engage in illicit sex with her. The Court said, however:

"Where an unlawful act is done, the law presumes it was done with an unlawful intent, and here the act of administering the poison was unquestionable [sic] unlawful."

Clearly, this language has no applicability to the circumstances of the case at bar.

Examining the *Scott* case we find a charge of assault with intent to murder. The victim, a drunken sailor, attempted unsuccessfully several times to engage defendant Scott in an altercation. Finally the victim approached him, whereupon defendant Scott asked for and was given a loaded gun. He pointed it at the victim over objection and shot him in the face, wounding him seriously but not fatally. Regarding intent our Court said:

"The intent to kill must undoubtedly be established, as an inference of fact, to the satisfaction of the jury; but they may draw that inference, as they draw all other inferences, from any fact in evidence which, to their minds, fairly proves its existence. Intentions can only be proved by acts, as juries can not look into the breast of the criminal. And where any act is knowingly committed which naturally and usually leads to certain consequences, a jury certainly has the right, in the exercise of ordinary sagacity, to draw the inference that such results are intended." 6 Mich 287, 296.

We conclude that the instructions, when read as a whole, did not present to the jury all the law of the case. Under the facts presented the instructions on intent were erroneous as given. They focused upon intent regarding the consequences of the act and never even considered the intent to do the act itself. The defendant's theory of defense was not addressed to intent to kill, but rather that

the shooting was accidental. However, this element became the subject of presumption under the instructions as given.

Defendant was entitled to have all the elements of the crime submitted to the jury in a charge which was neither erroneous nor misleading. See *People v Liggett,* 378 Mich 706, 714 (1967) and cases cited therein.

Having found reversible error on this issue we find it unnecessary to address ourselves to the others, for we would not presume that the trial court would err in its instructions upon retrial.

Reversed and remanded for new trial.

T. E. Brennan, T. G. Kavanagh, Swainson, and Williams, JJ., concurred with T. M. Kavanagh, C. J.

Levin and M. S. Coleman, JJ., did not sit in this case.