PEOPLE v JORDAN

1. CRIMINAL LAW—DEFENSES—INSANITY—INSTRUCTIONS TO JURY—
   HARMLESS ERROR.

   The standard by which a jury in a criminal case could have found insanity as a defense to the crime charged was not improperly narrowed by the trial court's use of the term "irresistible impulse" in the instructions where the jury was informed that the duration of defendant's insanity was not controlling; where the instructions were almost verbatim those requested by defendant's counsel, and no objection was made to the charge, any resulting error was harmless.

2. CRIMINAL LAW—INTENT—PRESUMPTIONS—ACTS OF DEFENDANT.

   A conclusive presumption that intent must be found from acts of a defendant is not permitted because this would effectively remove intent as an element of the crime charged.

3. CRIMINAL LAW—INTENT—SPECIFIC INTENT—PRESUMPTIONS—ACTS
   OF DEFENDANT.

   Specific intent cannot be presumed as a matter of law from specific acts of a criminal defendant.

4. CRIMINAL LAW—INTENT—SPECIFIC INTENT—PRESUMPTIONS—BUR-
   DEN OF PROOF—INSTRUCTIONS TO JURY—DUE PROCESS.

   Instructing a jury at a trial for a crime requiring specific intent that the presumption that the defendant intends the natural consequences of his acts applied until contradictory evidence was submitted by defendant was error because the trial judge in effect shifted the burden of proof to defendant, and the due process clause protects the accused against conviction except upon proof beyond reasonable doubt of every element necessary to constitute the crime.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 36.
   Irresistible impulse as excuse for crime, 173 ALR 392.
[2–4, 6] 21 Am Jur 2d, Criminal Law § 82.
   29 Am Jur 2d, Evidence § 324.
[5] 53 Am Jur, Trial §§ 135, 136.
   5 Am Jur 2d, Appeal and Error § 545.

5. Criminal Law—Instructions to Jury—Miscarriage of Justice—
   Appeal and Error—Preserving Question.

It is error for a trial court to give a misleading or erroneous
instruction in a criminal trial which results in a miscarriage of
justice denying defendant a fair trial, and the defendant's
failure to object to the erroneous instruction is not fatal to his
position on appeal.

6. Criminal Law—New Trial—Different Offenses—Compromise
   Verdicts.

Reversal of a defendant's conviction of assault with intent to do
great bodily harm less than murder because of error in in-
structing the jury regarding specific intent also entitled the
defendant to the benefit of a new trial on his conviction of
felonious assault, a nonspecific intent crime, which arose from
the same trial, because the defendant's conviction on this count
could have resulted from a compromise verdict between acquit-
tal and assault with intent to commit murder, the original
charge against the defendant.

Appeal from Recorder's Court of Detroit, Elvin
L. Davenport, J. Submitted Division 1 November 6,
1973, at Detroit. (Docket Nos. 15881, 15882.) De-
cided March 5, 1974.

Carl Jordan was convicted of assault with intent
to do great bodily harm less than murder and
felonious assault. Defendant appeals. Reversed and
remanded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Dominick R. Carnovale,*
Chief, Appellate Department, and *Robert A.
Reuther,* Assistant Prosecuting Attorney, for the
people.

*Theodore B. Sallen (Carl Ziemba,* of counsel), for
defendant on appeal.

Before: Lesinski, C. J., and Fitzgerald and Car-
land,* JJ.

Fitzgerald, J. Defendant was tried on two
charges of assault with intent to commit murder[1]
which were consolidated for trial and appeal. A
jury returned verdicts of guilty of the lesser in-
cluded offense of assault with intent to do great
bodily harm less than murder[2] and felonious as-
sault.[3] Concurrent sentences of 5 to 10 years and 2
to 4 years were imposed respectively granting
defendant credit for the 176 days already served in
prison.

 This case arises out of a shooting incident occur-
ring on November 16, 1971. Defendant went to the
home of Phyllis Allen, a girl he had previously
dated. He was met by Miss Allen's mother who
advised him that Phyllis was not home. Defendant
then shot John Butler, Phyllis' father, in the jaw
and wounded Phyllis' sister, Dorothy, in the arm.

Police officer Fred Bedient went to the Butler
home with his partner and attempted to appre-
hend the defendant peacefully. Officer Bedient met
with resistance and was twice fired upon by de-
fendant. At this point, Officer Bedient shot and
wounded defendant, subsequently taking him into
custody. The two separate counts of assault with
intent to commit murder involved defendant's
shooting of John Butler and Officer Bedient. De-
fendant entered defenses of intoxication or, in the
alternative, insanity.

Two issues are raised on appeal, the first of
which is without merit. Defendant initially argues

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 750.83; MSA 28.278.

[2] MCLA 750.84; MSA 28.279.

[3] MCLA 750.82; MSA 28.277.

that the trial court improperly instructed the jury as to the defense of insanity. The use of the term "irresistible impulse" by the court was challenged by defendant as not being in conformity with the Michigan standard of insanity because it was unduly restrictive. By improperly narrowing the standard by which the jury could have found insanity, the defendant was prejudiced notwithstanding the absence of defense counsel's objection. We have reviewed the court's insanity instructions in their entirety and find the elements of the insanity defense as set out in *People v Martin,* 386 Mich 407; 192 NW2d 215 (1971), were adequately presented. The jury was informed that the duration of the defendant's insanity was not controlling. Defendant's claim that temporary insanity only was considered is untenable. Since the instructions were almost verbatim to those requested by defendant's counsel, and no objection was made to the charge, any resulting error is harmless. *People v Ingram,* 36 Mich App 160; 193 NW2d 342 (1971).

The second issue is whether the trial court correctly instructed the jury as to the proper consideration to be given evidence of defendant's conduct in determining whether the requisite intent existed. The trial judge instructed the jury of the presumption that one intends the natural and probable consequences of his acts. The presumption that intent can be proved solely from the acts of defendant erroneously casts the burden of proving the absence of such intent upon the defendant. This shift of the burden of proof is a denial of defendant's right to be proved guilty beyond a reasonable doubt.

The people deny that this presumption was created, contending that the jury was merely permit-

ted to infer such intent from defendant's acts. The burden of proof did not shift since the jury was not required to presume intent from defendant's acts, thus permitting them to conclude the absence of the requisite intent. Further, defendant's position is untenable considering that no objection to the instruction was made at trial and no miscarriage of justice resulted.

A conclusive presumption that intent must be found from acts of a defendant is not permitted. This would effectively remove the requisite intent as an element of the crime in direct violation of the criminal statute. In *Morissette v United States,* 342 US 246, 275; 72 S Ct 240, 256; 96 L Ed 288, 306–307 (1952), the Court stated:

"A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. * * * [T]his presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime." (Footnote omitted.)

In *Mann v United States,* 319 F2d 404 (CA 5, 1963), the court's instruction that a person is presumed to intend the natural consequences of his own acts was prefaced by the words "unless the contrary appears from the evidence". On appeal, the Court found this to improperly shift the burden of proof to the defendant, stating at 409:

"If an inference from a fact or set of facts must be overcome with opposing evidence, then the inference becomes a presumption and places a burden on the accused to overcome that presumption. Such a burden is especially harmful when a person is required to overcome a presumption as to anything subjective, such

as intent or wilfulness, and a barrier almost impossible to hurdle results."

Michigan courts have recently stated that specific intent cannot be presumed as a matter of law from specific acts of the defendant. *People v Williams No 2,* 45 Mich App 630; 207 NW2d 180 (1973); *People v Pepper,* 389 Mich 317; 206 NW2d 439 (1973). Justice LEVIN, dissenting in *People v Pepper,* 36 Mich App 437; 194 NW2d 67 (1971), which was ultimately reversed by the Supreme Court, points out the dangers of failing to properly distinguish between mandatory presumptions and permissible inferences which may be drawn by the jury. In *People v Morrin,* 31 Mich App 301; 187 NW2d 434 (1971), this Court discussed at length the methods of determining malice, a form of intent, from defendant's conduct. There, the presumption of innocence applied to the element of malice as well as to the remaining elements of murder. Consequently, malice aforethought was held to be a permissible inference and not a mandatory presumption.

The trial court included the following remarks in its charge to the jury:

"The intent may be presumed from the doing of a wrongful, fraudulent or illegal act, but this inference or presumption is not necessarily conclusive. The law presumes that every man intends a legitimate consequence of his own act * * * .

"When a specific intent is necessary, it need not necessarily be shown by direct or positive evidence. But it may be inferred from the circumstances. The principle that a man is presumed to have intended the natural and probable consequence of his act applies.

* * *

"An alternative defense is permitted in the law and it is for you to decide which, if any, defense to accept. *In*

*any case, there is a presumption at the outset that the defendant intends the consequences of his acts and/or as seen [is sane?] but as seen [?] as evidences offered by defendant which tends to overthrow that presumption.* It then rests upon the prosecution to convince you jurors beyond a reasonable doubt that the defendant, in fact, was able to entertain the specific intent to murder, or that he was seen [sane], when any credible evidence, that is evidence that you believe is given on behalf of the defendant, which tends to 'overthrow the presumption that every man is sane until the contrary is shown, or that every man is presumed to intend the consequence of his act, when any credible evidence is given on behalf of the defendant which tends to overthrow these presumptions. *That defendant intended the natural consequence of his act or that he was insane, you jurors act on it, understanding the initiative in presenting the evidence is taken by the defense."* (Emphasis supplied.)

Taken in its entirety, the above charge properly informed the jury that reference to the word "presumption" was in reality an allowable inference. The jury was permitted but not required to find from the evidence that defendant did indeed have the specific intent to commit the crime. Furthermore, the charge properly advised the jury of the prosecution's duty to prove all elements of the offense, including that of specific intent, beyond a reasonable doubt. The ultimate burden of proof clearly rested with the prosecution and to this extent the jury was correctly charged.

However, correctly placing the burden of proof upon the prosecution must be distinguished from the burden of going forward with evidence. The jury was instructed that the defendant had the original burden of going forward with at least some evidence to negate specific intent. The presumption that defendant intended the consequences of his acts was applicable unless he of-

fered some measure of contradictory evidence, in which case the burden of going forward then shifted to the prosecution. This is reversible error. Throughout the above portion of the charge, presumptions accompanying insanity and intoxication (or more specifically, intent) were intermingled. As an affirmative defense, the issue of insanity must first be raised by the defendant before the prosecution is required to prove his sanity beyond a reasonable doubt. However, specific intent is an element of assault with intent to murder and assault with intent to do great bodily harm less than murder. As such, the prosecution is required to prove beyond a reasonable doubt the existence of this element as well as the remaining elements of the crime. It is not incumbent upon the defendant to introduce any evidence at any time. By instructing the jury that the presumption that defendant intends the natural consequences of his acts applied until contradictory evidence was submitted by the defendant, the trial judge in effect shifted the burden of proof to defendant. That the due process clause protects the accused against conviction except upon proof beyond reasonable doubt of every element necessary to constitute the crime is fundamental to our criminal justice system. *In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970).

*People v Adams,* 48 Mich App 595, 601; 210 NW2d 888, 891 (1973), presented a similar claimed error regarding jury instructions on the element of intent. The Court stated:

"The question of intent is one that is hard to establish directly, because grown persons do not always disclose the object they have in view in any act in which they may indulge. And, you have to gather the intent from the character of the act and the circum-

stances surrounding it. But in connection with all this, unless the testimony satisfies you of something else, you are warranted in holding a party responsible for the natural, probable and legitimate consequences of his act."

*Adams* is distinguishable on two counts. First, no mention is made of requiring the defendant to *initiate* the submission of evidence to counter the presumption that a person is presumed to intend the consequences of his acts. Second, the trial court followed the objectionable instructions with additional comments which served to clarify any misconception the jury may have had regarding the burden of proof. This did not occur in the instant case.

Defendant's failure to object to the erroneous instructions is not fatal to his position. It is error for the trial court to give a misleading or erroneous instruction which results in a miscarriage of justice denying defendant a fair trial. *People v Kelley,* 21 Mich App 612; 176 NW2d 435 (1970); *People v Guillet,* 342 Mich 1; 69 NW2d 140 (1955).

While felonious assault is a nonspecific intent crime,[4] defendant's conviction on this count could have resulted from a compromise verdict between acquittal and assault with intent to commit murder. Consequently, defendant is entitled to the benefit of a new trial on this count also.

Reversed and remanded.

All concurred.

---

[4] *People v Rohr,* 45 Mich App 535; 206 NW2d 788 (1973).