PEOPLE v SMITH

OPINION OF MAHER, J.

1. CRIMINAL LAW—INSTRUCTIONS TO JURY—ELEMENTS OF OFFENSE—
REQUIREMENTS OF JURY INSTRUCTIONS.

*Once a defendant enters a plea of not guilty he has an absolute
right to a jury determination upon all essential elements of the
offense charged, which must be submitted to the jury in a
charge which is neither erroneous nor misleading and which
clearly indicates that the prosecution is required to prove each
element beyond a reasonable doubt.*

2. CRIMINAL LAW—INTENT—BURDEN OF PROOF.

*Reversal of a criminal conviction of an offense requiring intent is
mandated where the burden is erroneously cast upon the
defendant to prove the absence of the intent required for
conviction.*

3. CRIMINAL LAW—INSTRUCTIONS TO JURY—INTENT—BURDEN OF
PROOF—PRESUMPTION OF GUILT.

*An instruction to the jury, in a case of assault with intent to
commit murder, which improperly directed the jury to look to
the defendant for evidence explaining his acts and, absent an
explanation, to assume he had the requisite intent, has the
overall effect of placing the burden on the defendant to produce
evidence in order to overcome a presumption of guilt and is
reversibly erroneous.*

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial §§ 713, 715.
Duty in instructing jury in criminal prosecution to explain and
define offense charged. 169 ALR 315.
[2, 9] 21 Am Jur 2d, Criminal Law § 81 *et seq.*
[3] 75 Am Jur 2d, Trial § 756.
[4–7, 10] 6 Am Jur 2d, Assault and Battery § 69 *et seq.*
Duty of trial court to instruct on self-defense, in absence of request
by accused. 56 ALR2d 1170.
[8] 5 Am Jur 2d, Appeal and Error § 553.
75 Am Jur 2d, Trial § 906.

4. Criminal Law—Defenses—Self-Defense—Elements of Self-De-
   fense.

   *The defense of self-defense requires a showing that: (1) the
   accused was without fault or in other words was not the
   aggressor in bringing about the conflict; (2) under the circum-
   stances as they appeared to the accused at the time he was in
   danger of death or of suffering great bodily injury; (3) except
   where assaulted in his own dwelling, there was no way open to
   the accused for retreat; and (4) the only recourse lay in repell-
   ing the attack by physical means.*

5. Criminal Law—Defenses—Self-Defense—Aggressors.

   A person may only be held legally accountable as an aggressor
   for responsive conduct by another that is reasonably attributa-
   ble to the aggressor's own conduct.

6. Criminal Law—Defenses—Self-Defense—Instructions to
   Jury.

   A trial court's instruction to a jury on self-defense, in a trial for
   assault with intent to murder, that the jury was to consider all
   the circumstances and facts surrounding the beginning of the
   incident in order to determine who was the aggressor, was
   misleading where the defendant had initially become involved
   in a dispute with an employee at the complainant's gas station
   and the complainant subsequently became involved in a new
   dispute which resulted in a gun battle with the defendant
   which did not involve the employee.

Opinion of Bashara, J.

7. Criminal Law—Instructions to Jury—Misleading Instruction
   —Self-Defense.

   An instruction to the jury which asked them to consider all of the
   circumstances surrounding the beginning of an incident was
   erroneous where the jury may have been misled into believing
   that one who starts an argument is precluded from asserting
   self-defense.

Opinion of V. J. Brennan, P. J.

8. Appeal and Error—Instructions to Jury—Objection—Mani-
   fest Injustice—Court Rules.

   *The Court of Appeals will not consider claims of error based upon
   alleged erroneous jury instructions where there was no objec-*

tion made at trial, absent a showing of manifest injustice (GCR 1963, 516.2).

9. CRIMINAL LAW—INSTRUCTIONS TO JURY—MANIFEST INJUSTICE—INTENT—BURDEN OF PROOF.

Instructions to the jury are to be examined as a whole in determining whether they resulted in manifest injustice to a defendant, and no manifest injustice is found in an allegedly erroneous instruction on the element of intent where, when read as a whole, the instructions did not shift the burden of proof on that element to the defendant.

10. CRIMINAL LAW—INSTRUCTIONS TO JURY—SELF-DEFENSE—PREJUDICE—AGGRESSORS.

Instructions to the jury on self-defense, when read as a whole, did not prejudice a defendant where the trial judge clearly gave the question of self-defense to the jury to decide, the instructions were adequate, the testimony of the complainant was undisputed that the defendant drew his gun first in the altercation which gave rise to the charges involved, and the judge instructed the jury that in making their determination of who the aggressor was, they should consider all the facts and circumstances of the case.

Appeal from Recorder's Court of Detroit, Thomas L. Poindexter, J. Submitted October 14, 1975, at Detroit. (Docket No. 20561.) Decided February 9, 1976. Leave to appeal denied, 397 Mich —.

Samuel Smith was convicted of assault with intent to commit murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Ronald P. Weitzman,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: V. J. BRENNAN, P. J., and BASHARA and
R. M. MAHER, JJ.

R. M. MAHER, J. Defendant was convicted by a
jury of assault with intent to murder. MCLA
750.83; MSA 28.278. He was sentenced to a term of
from 7-1/2 to 20 years in prison and appeals.

At trial, Henry Thomas testified that on October
26, 1973, he was employed at the Standard station
at Mack and St. Aubin in the City of Detroit when
defendant drove into the station seeking service.
Defendant stated that he wanted $2 worth of gas,
claiming later to have asked for $3 worth of gas.
The witness, who had pumped $2 worth of gas into
defendant's car, turned back the dials on the gas
pump and proceeded to pump an additional $1
worth of gas. Defendant, however, protested that
Thomas had pumped only $1 worth of gas into his
car, as shown by the dials on the pump, and would
not accept the witness's explanation that it is
necessary to turn the dials back to zero before
additional gas can be pumped. An argument en-
sued and Henry McKinney, the owner of the sta-
tion and complainant in this case, came up and
inquired what the trouble was. Upon being told, he
and defendant got into an argument. At this point,
Thomas went back into the station and heard
shots. He did not see who fired the shots.

Henry McKinney, complainant here, testified
that after learning of the dispute, he insisted that
defendant pay $3, but defendant refused. Com-
plainant told defendant that he could not go
around taking things and get away with it, where-
upon defendant said, "I'll take your life". Defend-
ant then turned away and pulled a gun. Complain-
ant pulled his gun and there was some shooting,
although McKinney did not know who shot first.
McKinney was shot through the arm and the

bullet is still lodged in his ribs. Complainant fired his gun until it was empty and defendant suffered multiple wounds.

Defendant's theory of the case, as expressed by counsel in closing argument, was that the jury must have a reasonable doubt that defendant was the aggressor because complainant had testified at the preliminary examination that he drew his gun when he saw defendant fumbling in his sweater. Furthermore, even though complainant's gun was a five shot revolver, defendant was shot seven times and complainant had testified at the preliminary examination that four or five persons had been shooting.

On appeal, defendant claims that the trial court failed to properly instruct the jury. He argues that the trial court's charge on the element of intent cast the burden of proof upon defendant and that its charge on self-defense was misleading.

"Once a plea of not guilty is entered, the defendant 'has an absolute right to a jury determination upon all essential elements of the offense.' " *People v Reed,* 393 Mich 342, 349; 224 NW2d 867 (1975), *cert den,* 422 US 1044; 95 S Ct 2660; 45 L Ed 2d 696 (1975). All the elements of the crime must be submitted to the jury in a charge which is neither erroneous nor misleading, *People v Liggett,* 378 Mich 706, 714; 148 NW2d 784 (1967), and clearly indicates that the prosecution is required to prove each element beyond a reasonable doubt. *In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970). Instructions to the effect that the jury should look to defendant for evidence explaining his acts or that the law presumes intent from defendant's acts may serve to impermissibly shift the burden of proof. Where the burden is erroneously cast upon defendant to prove the absence

of the intent required for conviction, reversal is mandated.

In the present case, the trial court instructed the jury on the element of intent as follows:

"Now, the next element of the crime is that the assault must have been committed with the intent to kill and murder. The question of intent is one that is hard to establish directly because grown persons do not always disclose they—the object they have in view in any acts in which they may indulge, and you have to gather the intent from the character of the act, the circumstances surrounding it, and from the conduct of a like character which may appear, as tending to aid you in finding and discovering it, but, in this connection, with all this, *unless the testimony satisfies you of something else,* you are warranted in holding a party responsible for the natural, probable and legitimate consequences of his acts.

"Now, an intent may be inferred—of this kind—may be inferred from the doing of a wrongful, fraudulent or illegal, act, and if the intention is to kill and murder another person, that satisfies the requirement of an intent to kill and murder in this case, unless, as I will explain to you, it is done under necessary self-defense, because *the law assumes that every man intends the natural consequences of his own acts.*" (Emphasis supplied.)

In *People v Pepper,* 389 Mich 317; 206 NW2d 439 (1973), defendant contended that decedent was killed by accident but did not have his theory explained to the jury in the trial court's instructions. The only defense explained to the jury was self-defense and even that was removed from consideration by a supplemental instruction. The Michigan Supreme Court found that the trial court's failure to instruct on excusable homicide, when coupled with the trial court's instruction on intent, assured defendant's conviction. The trial

court had charged the jury that intent is presumed as a matter of law from defendant's acts. This focused the jury's attention on intent regarding the consequences of defendant's act when defendant's theory of defense was not addressed to intent to kill but rather the intent to do the act itself. Whether or not the shooting was accidental became the subject of a presumption under the trial court's instructions.

This Court distinguished *People v Pepper, supra,* from the situation presented in *People v Adams,* 48 Mich App 595; 210 NW2d 888 (1973). In *Adams,* the trial court's instruction on intent, much like the one presented here, contained both "unless the testimony satisfies you of something else, you are warranted in holding a party responsible for the natural, probable and legitimate consequences of his act" and "the law presumes that every man intends the legitimate consequences of his acts". The Court of Appeals affirmed, not finding manifest injustice. Defendant's main defense in *Adams* was that of intoxication. The Court felt that the jury was properly charged as to intoxication, that the defense of intoxication was "inextricably interwoven" with the element of intent and that the holding in *Pepper* did not require reversal in *Adams.*

The case of *People v Jordan,* 51 Mich App 710; 216 NW2d 71 (1974), in turn, distinguished *People v Adams, supra.* In *Jordan,* the trial court's charge on intent coupled the word presumption with an instruction that defendant had the burden of coming forward with some evidence to negate the presumption that he intended the consequences of his acts. The Court, on p 716, felt that "[t]aken in its entirety, the [instruction] properly informed the jury that reference to the word 'presumption' was

in reality an allowable inference". However, instructing the jury "that the defendant had the original burden of going forward with at least some evidence to negate specific intent" and that "[t]he presumption that defendant intended the consequences of his acts was applicable unless he offered some measure of contradictory evidence" resulted in a miscarriage of justice.

In the case at bar, the trial court's instruction regarding intent did not cast the burden of going forward with evidence to negate specific intent with the force of the instructions in *Jordan.* On the other hand, we do not find the instant instructions to contain comments, such as those relied on by this Court in *Adams,* which would serve to clarify any misconception the jury might have had regarding the burden of proof.[1] The trial court's instruction, in this case, had the effect of improperly directing the jury to look to defendant for evidence explaining his acts and, absent an explanation, to assume intent. Use of the word "presumption", or its equivalent, does not automatically mandate reversal. *People v Jordan, supra,* 716. However, where the overall effect of the instruction places a burden upon defendant to produce evidence in order to overcome a presumption of guilt, such an instruction is inconsistent with the presumption of innocence. All the elements of the crime charged, in this case, were not submitted to the jury in a correct and consistent manner. We find the instruction to be erroneously misleading and reverse. Unless the jury is properly instructed, it is unable to properly pass upon the evidence.

---

[1] Following its charge on intent, the trial court stated that, "[T]he people must prove each of those elements beyond a reasonable doubt." This general statement did not serve to clarify the trial court's earlier statements regarding intent.

With respect to the trial court's instruction on self-defense, did the trial court err in charging the jury "to consider all the circumstances and facts surrounding the *beginning* of this incident in order to determine who was the aggressor in the situation"? (Emphasis supplied.) Self-defense requires a showing that:

"(1) *the accused was without fault or in other words was not the aggressor in bringing about the conflict;* (2) under the circumstances as they appeared to the accused at the time he was in danger of death or of suffering great bodily injury; (3) except where assaulted in his own dwelling, there was no way open to the accused for retreat; and (4) the only recourse lay in repelling the attack by physical means." *People v Bright,* 50 Mich App 401, 406; 213 NW2d 279 (1973) (Emphasis supplied.)

In *People v Townes,* 391 Mich 578; 218 NW2d 136 (1974), defendant entered deceased's tire store and began accusing one of the employees of dating his wife. Deceased ordered defendant to leave the store. When defendant refused, deceased produced a revolver and again ordered defendant to leave. Prosecution witnesses testified that defendant left reluctantly, only to return suddenly and shoot deceased. Defendant testified that he was frightened when confronted with the gun, remaining in fear as he watched deceased holster the pistol, and only shot in self-defense when deceased made a sudden move. The trial court's instruction apparently focused on defendant's conduct with respect to the store employee and erroneously assumed that if defendant provoked a disturbance in the tire store, he could then be held accountable, as an aggressor, for any response to his conduct, whether by the store employee or deceased owner. This is not the law. "[A person] may only be held

legally accountable as an aggressor for responsive conduct by another that is reasonably attributable to [that person's] own conduct." *People v Townes, supra,* at 592.

In the present case, defendant began a disruption at the gas station by refusing to pay $3 for gas. It was to this refusal to pay that complainant initially responded and it was at that point he and defendant began arguing. Complainant testified at trial that he pulled his gun after defendant pulled his. Defense counsel pointed out the inconsistency of complainant's testimony at trial with his testimony at the preliminary exam where complainant testified that he drew his gun when he saw defendant fumbling in his sweater. The problem with the trial court's instruction in this case is that it could reasonably be understood to have focused on the initial disruption with the gas station employee and not the crucial point of inquiry, defendant's conduct to which complainant responded by drawing his gun and firing.

"The general doctrine undoubtedly is that one who has taken the life of an assailant, but who was himself in the wrong, cannot avail himself of the plea of self-defense. But the wrong which will preclude him from making that defense must relate to the assault in resistance of which the assailant was killed. If at the time the assault is made upon him, he is engaged in the commission of an act which is wrongful, but which is independent of the assault he may lawfully defend himself against it, to the extent even of slaying the assailant, if it is felonious, unless, indeed, his act is of such a character as to justify the assault." *People v Townes, supra,* at 593, quoting *State v Perigo,* 70 Iowa 657, 666; 28 NW 452 (1886).

The instructions on self-defense, as they related to

the facts in this case, were misleading and should be clarified on retrial.

Reversed and remanded for a new trial.

BASHARA, J. *(concurring in result).* I agree with Judge MAHER that the following self-defense instruction was reversible error:

> "The defendant cannot be the aggressor in the situation; if so, he cannot claim self defense and, for that reason, *it is important for the jury to consider all the circumstances and facts surrounding the beginning of this incident in order to determine who was the aggressor in the situation* because, if the defendant was the aggressor under the circumstances, he cannot claim self defense in the case. (Emphasis supplied.)

The instruction may have misled the jury to believe that defendant in initiating the dispute by refusing to pay $3 was precluded from asserting self-defense. The defendant may only be held accountable as an aggressor for responsive conduct by another that is reasonably attributable to defendant's own conduct. *People v Townes,* 391 Mich 578, 592; 218 NW2d 136 (1974).

However, I cannot agree with Judge MAHER that the trial judge's instruction regarding intent improperly shifted the burden to the defendant to come forward and explain acts which formed the basis of the *mens rea.* A careful reading of the entire intent instruction discloses that the burden of proof remained with the prosecutor.

Therefore, I concur with the result reached by Judge MAHER.

V. J. BRENNAN, P. J. *(dissenting).* I must respectfully dissent from my Brother MAHER's opinion.

The majority opinion states that "where the

overall effect of the instruction places a burden upon defendant to produce evidence in order to overcome a presumption of guilt, such an instruction is inconsistent with the presumption of innocence. All the elements of the crime charged, in this case, were not submitted to the jury in a correct and consistent manner." After careful reading and rereading of the trial judge's instructions, I find these instructions neither misleading nor incorrect. Immediately following the portion of the instructions quoted by the majority, the trial judge went on to instruct as follows:

"Now, as evidence of intent in this case the jury might properly consider whether or not a deadly weapon was used in the assault, and a pistol of the kind that was introduced into evidence in this case is a deadly weapon—if you find that that weapon was used in committing an assault, the jury may consider that properly in determining whether there was an intent to kill and murder, and, likewise, the jury may properly consider the location of any wounds that were caused as a result of the shooting incident that occurred.

"As I have said, the people must prove each of those elements beyond a reasonable doubt."

The majority candidly admits that the fatally defective language of the judge's charge in *People v Jordan,* 51 Mich App 710, 716; 216 NW2d 71 (1974), is not present in the case at bar. With this much, I agree. But the majority reads the instructions as being possibly misleading to the jury in that the jury could have misunderstood the judge's instructions to mean that there is a presumption of guilt which arises from the acts of the defendant, and that the burden of going forward with the evidence is upon the defendant to rebut that presumption. This is a strained reading of the instructions at best. I think the trial judge was quite

clear in communicating to the jury the fact that intent as an element of the offense charged, being a state of mind, cannot be proved by direct evidence, but must be inferred from the totality of the facts and circumstances. The trial judge then went on to point out those facts and circumstances which they could consider in drawing the proper inference. The trial judge repeatedly told the jury that the people have the burden of proving each element of the crime beyond a reasonable doubt.

Further, it is well-settled law in Michigan that absent a showing of manifest injustice, this Court will not consider claims of error based on alleged erroneous instructions where there was no objection at trial. See GCR 1963, 516.2, *People v Spaulding,* 42 Mich App 492; 202 NW2d 450 (1972), *lv den* 388 Mich 809 (1972), *People v Peace,* 48 Mich App 79; 210 NW2d 116 (1973). In the case at bar, defendant did not object to the court's instructions and, in fact, expressed his satisfaction therewith. Therefore, this Court must determine whether the trial court's instructions resulted in manifest injustice. In determining whether the instructions were prejudicial to the defendant, the instructions are to be examined as a whole. See *People v Harper,* 43 Mich App 500; 204 NW2d 263 (1972), *lv den,* 389 Mich 759 (1973). The instructions read as a whole did not shift to defendant the burden of proof on the element of intent and I can find no manifest injustice.

The majority relies on *People v Townes,* 391 Mich 578; 218 NW2d 136 (1974). I find *Townes* inapposite and thus must respectfully disagree with my brothers. In *Townes* the defendant entered decedent's store and began an altercation with an employee. The decedent intervened with a gun and ordered defendant out of the store. The

defendant then left but returned immediately and shot decedent. The Supreme Court found the instructions in the *Townes* case to be reversibly erroneous in that it deprived the defendant of his defense of self-defense if the jury found that the defendant had provoked a disturbance in the store. Thus, the Court said that a person may be held accountable as an aggressor for responsive conduct by another only if the responsive conduct is reasonably attributable to that person's own conduct. In the case at bar there was no third-party intervention, and I do not believe that the instructions, read as a whole, can reasonably be understood to imply that the defendant would not have a right of self-defense, if assaulted with a deadly weapon, should the jury find that he had provoked a disturbance in the gas station.

The trial judge instructed the jury on the theory of self-defense as follows:

"Now, you will remember that when I defined an assault for you I said an assault is an offer or attempt with unlawful force, and if, what would otherwise be an assault, is done under necessary self defense, then the act is not unlawful because the law recognizes the right of self defense, and if done in self defense, the crime would not be committed.

"If a defendant wounds the complainant in self defense, honestly believing his own life to be in danger, or that he was in imminent danger of receiving serious bodily injury at the hands of the other party, and used no more force than was necessary to protect himself, then it would be self defense and, under these circumstances, the defendant would not be guilty of the crime charged.

"One who is threatened with immediate attack by an assailant is authorized to act, and his or her actions are to be judged in the light of the circumstances as they appeared to him or her * * * at that time, and if he believes that a violent act is imminent then it is imma-

terial whether or not a forceable attack upon him was intended by the other party.

"Now, the law does not countenance the shooting of another person except from the utmost necessity, and a defendant cannot claim self defense unless there was no other method of escaping death or serious injury. An assault with a deadly weapon could not be justified merely because another party had made annoying remarks or because there had been some civil transaction, such as going to the store and buying a pound of butter and a dispute arising out of it, or merely out of anger— these circumstances, in themselves, do not justify the exercise of self defense to the degree of using a deadly weapon, such as a pistol. The act of self defense must be actually necessary or appear to be actually necessary to the defendant in order to be an occasion for self defense.

"And, self defense is not justified under all circumstances. The defendant cannot be the aggressor in the situation; if so, he cannot claim self defense and, for that reason, it is important for the jury to consider all the circumstances and facts surrounding the beginning of this incident in order to determine who was the aggressor in the situation because, if the defendant was the aggressor under the circumstances, he cannot claim self defense in the case.

"Now, if there was any way open and the defendant, or the party claiming self defense, could have left the scene without great danger to himself, he must avail himself of that opportunity before resorting to the use of a deadly weapon, or he cannot claim self defense; however, if the parties are so closely engaged that it is obvious that time to escape would not be availing to the parties, then he is not required to retreat under those circumstances.

"Now, I should further instruct you that in considering whether or not this was an occasion for self defense, the burden is on the people to prove that it was not an occasion for self defense. In other words, if you have any doubt on the subject—a reasonable doubt—as to whether or not the defendant was properly acting in self defense then you should give him the benefit of that doubt and find him not guilty."

Unlike *Townes,* the jury was not instructed that if they should find that the defendant was the aggressor in bringing on the difficulty at the gas station that the defense of self-defense would be unavailable to him. Clearly, the trial judge gave the question of self-defense to the jury as a question of fact for them to decide. I do not believe that the defendant was prejudiced, because the instructions were adequate and the testimony of complainant was undisputed that defendant drew his gun first. Clearly, the trial judge intended to instruct the jury that in making their determination of who the aggressor was, they should consider all the facts and circumstances of the case, including those facts at the beginning of the incident. This was not error. In any event, the jury considered defendant's contention of self-defense and found him guilty. The defendant did not object to the instructions as given and I find no manifest injustice. I would not disturb the jury's finding.

I would affirm.