PEOPLE v PEOPLES

OPINION OF THE COURT

1. CRIMINAL LAW—INSTRUCTIONS TO JURY—REQUEST OR OBJECTION—APPEAL AND ERROR.

Absence of a request or objection at trial normally precludes appellate review of jury instructions; however, reversible error may be found where any charge omits an essential or material element of an offense or defense.

2. CRIMINAL LAW—INSTRUCTIONS TO JURY—SELF-DEFENSE—COMMUNICATED WITHDRAWAL—APPEAL AND ERROR.

An aggressor's communicated withdrawal from a confrontation revives his right to self-defense and failure to *sua sponte* instruct a jury in this area is reversible error; an instruction without mention of the law on communicated withdrawal is incomplete because it omits a material element of the defense.

3. CRIMINAL LAW—JURY DELIBERATIONS—ERROR—ASSUMPTIONS.

The course of a jury's deliberations cannot be assumed where error is possible because of the form of the instructions to the jury.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—SELF-DEFENSE—COMMUNICATED WITHDRAWAL.

An instruction on self-defense should include an instruction on an aggressor's communicated withdrawal from a confrontation only in those cases where the particular factual situation supports such an instruction.

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial §§ 577–579, 594, 595, 906, 907.
    4 Am Jur 2d, Appeal and Error § 533.
[2] 4 Am Jur 2d, Appeal and Error § 813.
[3, 5] 75 Am Jur 2d, Trial §§ 623, 928.
[4] 75 Am Jur 2d, Trial § 745 *et seq.*
[5] 4 Am Jur 2d, Appeal and Error §§ 623, 891.
[6] 75 Am Jur 2d, Trial §§ 906, 907.

5. COURTS—JUDGES—INSTRUCTIONS TO JURY—ERROR OF OMISSION—
   MISFEASANCE—LACK OF AUTHORITY.

> An error of omission of instructions that an aggressor's communi-
> cated withdrawal from a confrontation revives his right to self-
> defense cannot be attributed to misfeasance on the part of the
> trial judge where no such instruction was requested, no objec-
> tions were raised to the instructions as given, and no prior
> Michigan case spoke directly to the problem.

DISSENT BY D. E. HOLBROOK, P. J.

6. APPEAL AND ERROR—CRIMINAL LAW—INSTRUCTIONS TO JURY—FAIL-
   URE TO OBJECT—SELF-DEFENSE—INJUSTICE.

> *Failure to object to or to seek clarification of the trial court's
> instructions on self-defense should bar appellate review of those
> instructions because of a claim that the trial court failed to
> instruct* sua sponte *that an aggressor's communicated with-
> drawal from a confrontation revives his right to self-defense
> where the instructions given were in accordance with Michigan
> law, were not clearly erroneous, did not preclude the jury form
> considering defendant's claim of self-defense, and where there
> was no manifest injustice.*

Appeal from Recorder's Court of Detroit, Elvin
L. Davenport, J. Submitted March 2, 1977, at
Detroit. (Docket No. 27204.) Decided May 16, 1977.
Leave to appeal applied denied, 401 Mich —.

Green D. Peoples was convicted of second-degree
murder. Defendant appeals. Reversed and re-
manded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward Reilly Wilson,* Re-
search, Training and Appeals, and *Don W. Atkins,*
Assistant Prosecuting Attorney, for the people.

*George C. Edwards,* for defendant on appeal.

Before: D. E. HOLBROOK, P. J., and BASHARA and W. F. HOOD,* JJ.

BASHARA, J. Defendant Green Delano Peoples was convicted by jury of second-degree murder,[1] and appeals. He raises several issues concerning jury instructions at his trial.

On October 18, 1974, defendant and several other people, including the deceased, Will Liddell, were drinking and socializing at a private home in Detroit. Defendant and Liddell began to quarrel and subsequently left the house and engaged in a fistfight. After reentering the house the parties continued to argue. Defendant pulled a revolver and fired a shot into the wall above the deceased's head. It appears from the testimony that the defendant then told Liddell either that he "could" or "wanted" to kill him or that he, the defendant, "could have" killed Liddell during the fistfight.

After the shot was fired defendant surrendered his gun to one of the bystanders and continued drinking. The argument flared again, with Liddell possibly threatening to beat up the defendant. The other occupants of the house acted to avoid further conflict. Defendant was asked to leave and Liddell was taken into another room. Defendant did leave, only to return in a few moments to retrieve the cap to a bottle of whiskey. The defendant again left. The record is unclear whether the defendant took his revolver with him on the first or second departure.

The witnesses testified that they restrained Liddell from going out to face the defendant. Approximately one to five minutes after the defendant left

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCLA 750.317; MSA 28.549.

the house for the last time, Liddell was also allowed to leave the building.

After Liddell's exit, the remaining people in the house heard two shots. Outside they discovered Liddell's body and observed the defendant's car leaving the scene. No weapon was found on or near the deceased.

Defendant testified on his own behalf. He stated that the argument started when Liddell began verbally abusing him. He admitted shooting the handgun over Liddell's head while in the house, testifying that he did so in an effort to scare Liddell into ending the confrontation.

Defendant stated he was in the process of putting the whiskey bottle in the trunk of his car when he saw Liddell approaching him. He yelled at Liddell to stop while reaching into the car's trunk for a shotgun, which had been in the car in preparation for a hunting trip. Defendant maintained that he saw a "shiny object" in Liddell's hand as the deceased neared. He then fired a warning shot into the air, which only appeared to hasten Liddell's approach. He testified that he was at this time in fear for his life. The defendant admitted to then firing directly at Liddell. He did not see the deceased fall or check to see if Liddell indeed was armed, but instead immediately drove away.

At trial the defendant relied on the theory of self-defense. He now claims that the judge's instructions were erroneous and incomplete on the law, thus depriving him of the use of this defense.

The trial court instructed the jury as follows:

"To make the plea available it must appear that the respondent, or the accused was without fault on his part—why? If he himself was the aggressor, in the conflict—brought it upon, brought it on by word or

deed, he cannot invoke the doctrine of self-defense as an excuse for the killing unless he was at that time in immediate danger, danger of losing his own life or suffering some grievous bodily injury, and that there was no retreat open to him and his only safety lay in committing the act which caused the death of the now deceased. Some defense in proper cases is the right of every person, that *[sic]* it will not justify the taking of human life unless the jurors shall be satisfied from the testimony, first that the defendant was not the aggressor, by that meaning the other party bringing on the conflict by word or deed, that is, that he was without fault."

These instructions were drawn nearly verbatim from 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 906, form #404, p 1283.

Defendant contends that the court erred when it failed to instruct, *sua sponte,* that an aggressor's communicated withdrawal from a confrontation revives his right to self-defense. There was no request for such an instruction and no objection to the instruction as given. While normally the absence of a request or objection precludes appellate review, reversible error may be found where any charge omits an essential or material element of an offense or defense. *People v Liggett,* 378 Mich 706; 148 NW2d 784 (1967), *People v Townes,* 391 Mich 578; 218 NW2d 136 (1974).

The basic question facing this Court is whether the failure of the trial court to include an instruction on communicated withdrawal from the conflict was an omission of a material element of the defense theory of the case. Our review of Michigan law reveals no case that has spoken directly to the issue of a communicated withdrawal. We must therefore look to other sources to determine if this theory of self-defense is part of the jurisprudence of the state.

At common law, the exception to the general

rule that an aggressor[2] cannot claim the right to self-defense in cases in which there has been a communicated withdrawal is well recognized. The exception is explained in La Fave & Scott, Criminal Law, pp 394–395.

"It is generally said that one who is the aggressor in an encounter with another—*i.e.,* one who brings about the difficulty with the other—may not avail himself of the defense of self-defense. Ordinarily, this is certainly a correct statement, since the aggressor's victim, defending himself against the aggressor, is using lawful, not unlawful, force; and the force defended against must be unlawful force, for self-defense. Nevertheless, there are two situations in which an aggressor may justifiably defend himself. * * * (2) So too, an aggressor who in good faith effectively withdraws from any further encounter with his victim (and to make an effective withdrawal he must notify the victim, or at least take reasonable steps to notify him) is restored to his right of self-defense.

"Once again, one who knows (and perhaps one who should know) that he is in no danger because his opponent has withdrawn uses unlawful force when he then attacks his opponent." (Footnotes and citations omitted.)

A survey of other commentators reveals consistent acceptance of this theory.[3] Cases cited in these authorities indicate acceptance of this theory in a great number of state and Federal jurisdictions.

This body of law is strong evidence that the communicated withdrawal theory is a deeply entrenched element of the common law of self-de-

---

[2] By "aggressor" we mean the party that initiates the use of force, either deadly or nondeadly, that justifies a response in like force.

[3] *See* 1 Wharton, Criminal Law and Procedure, § 232, p 504; Miller, Criminal Law, § 67(g), pp 207–208; Perkins, Criminal Law 2d, Chap 10, § 4, pp 1009–1012; 1 Warren, Homicide, § 152, p 694; Anno: *Withdrawal, After Provocation of Conflict, As Reviving Right of Self-Defense;* 55 ALR3d 1000 (1974); 40 Am Jur 2d, Homicide, § 150, p 438.

fense. Whether that element exists in Michigan is a more difficult issue. While our courts apparently have not either accepted or rejected the theory, there are cases dealing with highly analagous situations.

In *People v Townes, supra,* the Michigan Supreme Court held a self-defense instruction virtually identical to that in the present case reversibly erroneous because it effectively denied the defendant, on the facts of the case, the use of a self-defense argument. The defendant had entered a store owned by the decedent in order to confront one of the store's employees on a personal matter. The decedent appeared with a gun and ordered the arguing parties out of the store. The owner was subsequently shot and killed by the defendant under disputed circumstances.

The *Townes* Court held that the instruction was erroneous, given these facts, because the jury may have been misled as to the scope of the term "aggressor".

"The court apparently focused on appellant's conduct with respect to Odom McMillion [the employee] and erroneously assumed that if appellant was at fault in provoking a disturbance in the tire store, he could then be held legally accountable as an aggressor for any response to his conduct, whether by McMillion or any other person. This was error. Appellant may only be held legally accountable as an aggressor for responsive conduct by another that is reasonably attributable to appellant's own conduct." 391 Mich at 592.

Even though the defendant in *Townes* neither requested a different instruction nor objected to the one that was given, the Court found reversible error:

"We again note that no objection was offered to the instruction as delivered; however, we nevertheless find reversible error herein. The appellant did not deny killing Burnett and his sole defense was self-defense. certainly then, the presence or absence of a situation under which appellant would be foreclosed from claiming self-defense was very material to his cause. 'The rule is well settled in this State that if an erroneous instruction is given on a material matter and the error is not corrected * * * such error must be regarded as prejudicial.'" (Citations omitted.) 391 Mich at 593–594.

In *People v Smith,* 67 Mich App 145; 240 NW2d 475 (1976), *lv den,* 397 Mich 821 (1976), the defendant became involved in an argument with a gas station employee over how much the defendant owed for gas. The owner of the station interjected himself into the argument and subsequently was shot by the defendant. The defense at trial was that the defendant was not the aggressor, and could thus claim self-defense, since the owner first pulled a gun.

The trial court instructed the jury on the absence of the right of self-defense to an "aggressor", and ordered the jury:

" '[T]o consider all the circumstances and facts surrounding the *beginning* of this incident in order to determine who was the aggressor in the situation.'" (Emphasis supplied.) 67 Mich App at 153.

The Court, per Judge MAHER, found this instruction, as in *Townes, supra,* may have prejudicially misled the jury into consideration of whether the defendant's conduct toward the employee, in which no force was involved, rendered the defendant an "aggressor" incapable of claiming self-defense. This author concurred in the self-defense portion of *Smith,* also citing *Townes* as authority.

The present case involves a factual situation related to those in *Townes, supra,* and *Smith, supra.* The defendant admits to have been the first to use deadly force on the date in question. However, he claims to have abandoned his aggression at the time of the actual shooting. If the communicated withdrawal theory is applicable, a jury could have found that the defendant was no longer an aggressor at the time he shot Liddell and that the homicide was therefore potentially excusable.

We hold that the theory of a communicated withdrawal was a part of the law of self-defense at the time of the trial and that the failure of the trial court to *sua sponte* instruct on this area is reversible error. It is conceivable that the instruction as given caused the jury to consider the defendant's initial aggression, his "fault", as a bar to any subsequent right to use self-defense. While it is equally conceivable that the jury rejected the defendant's claim of self-defense because they did not believe his testimony at all, or his claim to have been in fear for his life, we cannot assume the course of the jury's deliberations where error was possible. See *Townes, supra,* at 591. The instruction was incomplete because it omitted a material element of the defense, foreclosing the defendant from his only potential excuse for an otherwise admitted homicide.

Having so decided, this panel feels the need to add a number of caveats. First, this decision should not be read as either a rejection of the Gillespie form instruction or as precedent requiring an instruction on communicated withdrawal in all cases where self-defense is raised. The Gillespie instruction is a generally accurate statement of basic self-defense principles. The instruction on withdrawal of the initial aggressor is necessary only in those cases where the particular factual

situation supports such an instruction.[4] Likewise, the error in the present case arose solely because of the factual substance of the defendant's claim of self-defense.

Second, we do not wish this opinion to be read as a criticism of the trial judge. Where no instruction on this subject was requested, no objections were raised, and no prior Michigan case spoke directly to the problem, the error of omission cannot be attributed to misfeasance on the part of the court.

Finally, even though the decision in *Townes, supra,* mandates us to find reversible error in the case at bar absent any request or objection, we do not agree with the wisdom of the required result. We hope that the Supreme Court will reevaluate its decision in *Townes,* and place the burden of raising error more squarely on the defendant.

In view of the foregoing, we need not discuss the other issues which present no reversible error.

Reversed and remanded.

W. F. HOOD, J., concurred.

D. E. HOLBROOK, P. J. *(dissenting)*. Absent a showing of manifest injustice, this Court cannot consider claims of error based on an alleged erroneous instruction where there was no objection at trial. See GCR 1963, 516.2, *People v Spaulding,* 42 Mich App 492; 202 NW2d 450 (1972), *lv den* 388 Mich 809 (1972), *People v Peace,* 48 Mich App 79; 210 NW2d 116 (1973). Because there was no manifest injustice herein, this writer must respectfully dissent from the majority opinion.

The trial court instructed the jury as follows:

---

[4] For an example of the form an instruction on communicated withdrawal should take, *see* Proposed Michigan Criminal Jury Instruction, 7:9:04 (Deadly Aggressor).

"Now, we come to the defendant's defense in this case. He has interposed the defense of self-defense and I shall charge you with regard to that. First of all, when one may avail himself of it.—A justification of the offense charged against the defendant, he has interposed a plea of self-defense, and under certain circumstances this is a good defense. To make the plea available it must appear that the respondent, or the accused was without fault on his part—why? If he himself was the aggressor, in the conflict—brought it upon, brought it on by word or deed, he cannot invoke the doctrine of self-defense as an excuse for the killing unless he was at that time in immediate danger, danger of losing his own life or suffering some grievous bodily injury, and that there was no retreat open to him and his only safety lay in committing the act which caused the death of the now deceased. Some defense in proper cases is the right of every person, that *[sic]* it will not justify the taking of human life unless the jurors shall be satisfied from the testimony, first that the defendant was not the aggressor, by that meaning the other party bringing on the conflict by word or deed, that is, that he was without fault and, second, that there existed at the time of the fatal shooting in his mind a present and impending necessity to take the life of another, in order to save himself from death or great bodily harm. Third, that there must have been no way open whereby he could have retreated as it appeared to him at the time to a place of safety and thus avoided the conflict.

"Unless you find that all three of these facts are established in this case, then the plea of self-defense fails.

"Now, the burden of proof is not upon the defendant to offer or interpose his defense, the burden of proof is not upon him to satisfy your minds beyond a reasonable doubt that he acted in self-defense; on the contrary, the burden of proof does not shift from the prosecution. The prosecution therefore has the burden of satisfying your minds that it was not done in self-defense—

"I charge you that the evidence at this point should be carefully considered and weighed by the jury, so, for the reason if he did, in fact, act in self-defense at the

time of the alleged killing, then you are not to punish him for such an act.

"The evidence to this question of self-defense ought to be carefully considered by the jury for another reason and that is, to regard, for the ends of justice and the peace and welfare of society demands it to the end that a party charged with a crime may not use a plea of self-defense as a means to defeat the ends of justice and as a shield to protect them from criminal responsibility.

"If such criminal responsibility you find exists in this case, in all cases, even where the defense is made the burden is upon the People to show that the accused is guilty of the offense charged and to show such facts and circumstances as convinces the jurors that the killing was not done in self-defense. It is for you, members of the jury to say whether this respondent was assaulted in the manner claimed. The law gives to every person the right to protect himself from unlawful assault and an assault is an offer to do violence, having the present availability to carry the intention into effect. Where an assault is made, the right to exist,—not to exist,—resist, but to resist, must be proportionate to the danger feared or apprehended. It is not every assault that would justify a person in resisting by using a deadly weapon.

"If, however, the person assailed honestly believes his life to be in danger or that he may suffer serious bodily harm, he has the right to resist, even to the taking of the life of his assailant. The person assailed is to be judged by the circumstances,—if I have not said this already,—as they honestly appear to him at the time. There can be no self-defense by a person until he is assailed by another.

"Let me clarify that. Assaulted by another. An offer to do violence to his person, having the ability to carry it into effect. It is for you to say from all of the evidence in this cause, whether the respondent honestly believed he was in danger of losing his life, or in danger of great bodily harm and that it was necessary for him to fire the fatal shot in order to save himself from such apparent and threatened danger, although you may not be satisfied that the respondent in committing the act acted in self-defense, still if the testimony in this case

creates in your mind a reasonable doubt, as to whether
or not the act was done in self-defense, the respondent
is entitled to the benefit of the doubt and it would be
your duty to acquit him.

"I charge you that it is not necessary to be convinced
that the danger should have been actual or real, or that
the danger should have been impending and immedi-
ately enough follow the actions and the conduct of the
respondent, are to be judged from the circumstances as
they appeared to him at the time."

Defendant contends that the trial court erred
when it failed to instruct *sua sponte* that an
aggressor's communicated withdrawal from a con-
frontation revives his right to self-defense. There
was no request for such an instruction and no
objection to the instruction as given. These cited
instructions given by the trial court herein were
drawn nearly verbatim from 2 Gillespie, Michigan
Criminal Law & Procedure (2d ed), § 906, Form
#404, p 1283. The majority admits that the trial
judge could not be faulted and that Michigan law
did not clearly require at the time of trial such an
instruction as demanded now on appeal.

Furthermore, this writer feels that *People v
Townes,* 391 Mich 578; 218 NW2d 136 (1974),
relied upon so heavily by the majority, is not
applicable to this case. The trial court in *Townes*
gave the following instruction:

" 'Now the Defense in this case, members of the Jury,
is a defense of self-defense, and I charge you, members
of the Jury, first an aggressor is not necessarily a
person who strikes the first blow in a personal encoun-
ter, or makes the first demonstration indicating an
intent to strike. But if a person with a malice and
hatred in his heart towards such a person seeks to
provoke a difficulty either by acts or words with the
intent to induce such other person to strike the first
blow, or to make the demonstration in order to form a
pretext to take his life, then the Defendant could not

avail himself of the right of self-defense.' " *Townes,* at
584.

The Supreme Court found error because:

"The self-defense instruction was premised on the
incorrect assumption that there had been some evi-
dence introduced at trial from which the jury could
reasonably infer that appellant was the 'aggressor' in
the fatal confrontation with Burnett. The court appar-
ently focused on appellant's conduct with respect to
Odom McMillion and erroneously assumed that if ap-
pellant was at fault in provoking a disturbance in the
tire store, he could then be held legally accountable as
an aggressor for any response to his conduct, whether
by McMillion or any other person. This was error.
Appellant may only be held legally accountable as an
aggressor for responsive conduct by another that is
reasonably attributable to appellant's own conduct. See
*Cartwright v State,* 14 Tex Ct App R 486, 498–499, 502
(1883). In the present case there was no evidence that
would support the inferences created by the self-defense
instruction that Burnett's actions were a legally reason-
able response to appellant's conduct and therefore, that
appellant was an 'aggressor' with respect to Burnett."
*Townes,* at 591–592.

This is different error than that asserted herein
and, therefore, *Townes* is not controlling. The
Court in *Townes* emphasized that the error was a
factual one, that the instructions were erroneously
based upon a finding that the initial disturbance
was such as to make defendant therein an aggres-
sor. This is not so in the instant case. The facts are
such that defendant could have been found to have
been an aggressor at the time of the homicide
herein. This writer cannot conclude that the in-
structions given in this case removed the question
of self-defense from the jury as in *People v
Townes.*

The instant case involves even a clearer distin-
guishment of *Townes* than that presented by
Judge V. J. BRENNAN's well-written dissent in *Peo-*

*ple v Smith,* 67 Mich App 145, 157–160; 240 NW2d
475 (1976), *lv den,* 397 Mich 821 (1976).[1] The
instructions herein were given in accordance with
Michigan law, were not clearly erroneous and did
not preclude the jury from considering defendant's
claim of self-defense. There was no manifest injustice. Defendant's failure to seek clarification at
trial should bar appellate review.

This writer votes to affirm.

---

[1] Judge BRENNAN noted in *Smith* as follows:

"Unlike *Townes,* the jury was not instructed that if they should
find that the defendant was the aggressor in bringing on the difficulty
at the gas station that the defense of self-defense would be unavailable to him. Clearly, the trial judge gave the question of self-defense to
the jury as a question of fact for them to decide. I do not believe that
the defendant was prejudiced, because the instructions were adequate
and the testimony of complainant was undisputed that defendant
drew his gun first. Clearly, the trial judge intended to instruct the
jury that in making their determination of who the aggressor was,
they should consider all the facts and circumstances of the case,
including those facts at the beginning of the incident. This was not
error. In any event, the jury considered defendant's contention of self-defense and found him guilty. The defendant did not object to the
instructions as given and I find no manifest injustice. I would not
disturb the jury's finding." *Smith,* at 160.