PEOPLE v WRIGHT

PEOPLE v PEREZ

Docket No. 60646. Argued January 10, 1979 (Calendar No. 7).—Decided March 4, 1980.

Arnold R. Wright and Salvador Perez were convicted by a jury in Recorder's Çourt of Detroit, George W. Crockett, Jr., J., of conspiracy to deliver heroin and of delivery of heroin. The defendants did not object at trial to the instructions to the jury on the element of intent. However, in their motion for a new trial, which was denied, the defendants argued that giving the instructions that a person is presumed to intend the natural consequences of his actions and that the presumption is warranted unless the testimony satisfies the jury of something else constituted prejudicial error. The Court of Appeals, R. M. Maher, P.J., and N. J. Kaufman and Borchard, JJ., reversed in a per curiam opinion on the ground that the instructions complained of effectively shifted the burden of proof on intent to the defendants, thereby violating their right to the presumption of innocence (Docket Nos. 26356, 30055). The people appeal. On appeal, the defendants also argue that the instruction that an innocent intent does not excuse a wrongful act which is willfully or intentionally done is reversibly erroneous. In an

REFERENCES FOR POINTS IN HEADNOTES

[1-5, 11, 12, 14-18]
  29 Am Jur 2d, Evidence §§ 148, 152.
  75 Am Jur 2d, Trial §§ 624, 781.
[2, 9-12, 14-16]
  5 Am Jur 2d, Appeal and Error §§ 810, 812, 816, 817.
  75 Am Jur 2d, Trial §§ 762, 764, 919-922.
[6] 75 Am Jur 2d, Trial §§ 623, 762, 919-922.
[7-12, 14] 5 Am Jur 2d, Appeal and Error §§ 778, 791.
[11, 12] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 21, 27.13, 40, 45.
  Validity and construction of statute creating presumption or inference of intent to sell from possession of specified quantity of illegal drug. 60 ALR3d 1128.
[13, 15, 17] 5 Am Jur 2d, Appeal and Error § 894.

opinion by Justice Ryan, joined by all except Justice Williams, the Supreme Court *held:*

1. The Supreme Court of the United States has recently held that because the jury may have interpreted the challenged instruction on intent either as conclusive or as shifting the burden of persuasion, the instruction violated the requirement of the Fourteenth Amendment that the state prove every element of a criminal offense beyond a reasonable doubt. The latter interpretation is the more probable result in this case in which the jury was given essentially the same instruction, particularly in view of the fact that the trial judge compounded the potential for confusion of the jury by his added instruction that "this inference or this presumption is not necessarily conclusive". Besides injecting the unexplained notion of an inference (which can never be "conclusive"), the language suggests that there are cases where the presumption is conclusive. Moreover, the jury was not told whether this case was "necessarily" one of them. Whatever significance the jury may have attached to the presumption language, the instruction cannot survive constitutional challenge.

2. The potential hazard of the jury interpreting the instruction on presumed intent as either conclusive or as shifting the burden of persuasion is not removed by other correct instructions given on the presumption of innocence afforded the accused and on the state's burden of proving every element of the offense beyond a reasonable doubt. This forecloses the prospect, as suggested by the people, that the error is vitiated by other instructions concerning the prosecution's burden of proof which were given in a context unrelated to the presumption language. On the constitutionally vital point at issue here, the rationale of the Supreme Court of the United States is adopted; authorities stating that jury instructions must be read in their entirety in order to determine whether the defendant received a fair trial are not dispositive.

3. The trial court erroneously instructed the jury in two other respects. The first of the additional challenged instructions, given immediately before the instruction on presumed intent, was: "But in connection with all this, *unless the testimony satisfies you of something else,* you are warranted in holding a party responsible for the natural, the probable, and the legitimate consequences of his or her acts." Similar instructions have generated extensive criticism. The instruction has the potential for misleading the jury with respect to the requirement that the government must prove every element of an offense beyond a reasonable doubt. When the words "unless

the testimony satisfies you of something else" were introduced, the burden of proof was shifted from the prosecution to the defendant to prove lack of intent, because if an inference from a fact or set of facts must be overcome with opposing evidence, then the inference becomes a presumption and places a burden on the accused to overcome it. Such a burden is especially harmful when a person is required to overcome a presumption as to anything subjective, such as intent or willfulness. By instructing the jury "unless the testimony satisfies you of something else", the trial court created the prospect that the jury may have interpreted the judge's instruction as a burden-shifting presumption and the instruction is therefore unconstitutional.

4. The second additional challenged instruction was the trial court's advice that "wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent". Such an instruction tends to negate the intent element of the crime charged. Because this instruction may reasonably have been construed by the jury as shifting the burden of proof from the prosecution to the defendants, it is unconstitutional.

5. In fashioning a remedy for erroneous jury instructions that rise to Federal constitutional proportions, the Court looks first to Federal authority for guidance, because the question is a Federal question. The violation of a Federal constitutional right does not require automatic reversal in every case; only errors affecting the "substantial rights" of the defendant merit reversal of a criminal conviction. The Federal standard articulated by the Supreme Court of the United States is "harmless error", *i.e.,* whether the reviewing court is able to declare a belief that the error was harmless beyond a reasonable doubt. Harmless error analysis is appropriate in this case where the trial preceded authoritative disapproval of the erroneous instructions by the Supreme Court of Michigan and by the Supreme Court of the United States, but the Court does not foreclose the possibility that it might, as a matter of Michigan constitutional law or in the exercise of its supervisory power, adopt a more stringent approach to protect against continued use of the improper instructions. Concern for the judicial time and public and private funds spent, and individual liberties lost, while appellate courts reject charges containing burden-shifting instructions, coupled with the more vital fact that the instructions disapproved in this case are unfair, moves the Court to direct that trial courts discontinue the use of such instructions.

6. Constitutional errors in instructing the jury which in the

setting of a particular case are unimportant and insignificant do not require automatic reversal of a conviction. This "harmless error" rule recognizes that in determining what effect an erroneous instruction has upon the validity of the conviction, cognizance must be taken of the fact that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. A close scrutiny of the facts and circumstances of Wright's case and Perez's case leads to the conclusion that, although intent was not a focal point of inquiry in either case, the instructions affected the defendants differently. The prosecution's case against defendant Wright was particularly strong. His criminal intent was unequivocally manifest from the statements attributed to him by two prosecution witnesses. The evidence is that he engaged in a course of conduct over an extended period of time. The case against him turned essentially on the credibility of the prosecution's chief witness. The defense was predicated mainly upon his denial that he had said and done the things attributed to him. If the jury believed the testimony of the prosecution witnesses, Wright's conviction reasonably followed. The case against him was so overwhelming that, unless no violation of the decision on the challenged instruction can constitute harmless error, the conviction must stand. Because the Court was convinced beyond a reasonable doubt that the constitutionally erroneous instructions given in Wright's case were harmless, his conviction was reinstated and the case remanded to the Court of Appeals for consideration of his other claims of error. The prosecution's case against Perez, in contrast, consisted of little direct evidence of illegal activity. Perez denied any involvement in narcotics transactions, and sought to portray himself as an innocent person who had stumbled into incriminating circumstances. The primary question for the jury was whether he was part of a concert of action to deliver heroin and whether he delivered heroin in the course of his visit to Wright. In light of the slender evidence one cannot confidently say that the verdict was not influenced by the erroneous instructions which reflected a bias against him and tended to negate the prosecutor's burden of proof and shift some of the burden to Perez. It cannot be said that the constitutionally erroneous jury instruction was harmless beyond a reasonable doubt. The conviction of defendant Perez was reversed, and the case remanded to the Court of Appeals for consideration of his remaining claims of error which, if correct, would preclude a new trial.

Justice Williams would hold that the instructions, viewed in

their entirety, adequately instructed the jury and did not deny a fair trial to either defendant. He wrote:

1. The language concerning the presumption that a person intends the natural consequences of his willful and voluntary acts has been used by trial courts for more than 50 years and is incorporated in a commonly used criminal law and procedure text and form book. The Court of Appeals has examined the language and is divided on whether giving the instruction is reversible error. Among the Circuits of the United States Court of Appeals, three circuits have found the use of the instruction to be reversible error, and five circuits have disapproved of it but have not found reversible error.

2. Instructions to the jury must be reviewed in their entirety to determine whether the defendant received a fair trial. They are reviewed as a whole, and not as isolated sentences. Where the instruction complained of is not strictly correct, but the court can clearly see that the jury could not have been misled by it to the injury of the complaining party, a new trial will not be granted for that error.

3. There is no special warrant for the assumption that the clause "unless the testimony satisfies you of something else" means that the defendant must provide such testimony to overcome the presumption of intent. Speculation on the meaning of that clause is unnecessary in this case, however, because the clear, positive, and strong thrust of the instructions in their entirety is that "no defendant has an obligation to prove anything" and that a defendant is presumed innocent throughout the trial. The trial court also instructed the jury that the state is required to prove "each and every element" of the offense beyond a reasonable doubt. Consequently, the instructions in their entirety negated the possibility of an unfair trial.

4. The use of "the law presumes" language is clumsy and, in isolation, objectionable. It is improved by the preceding statement that this presumption is not necessarily conclusive and the fact that common usage employs "presumption" and "inference" almost interchangeably. However, the clear, positive, and strong thrust of the instructions in their entirety stresses that the prosecutor must prove each and every element of the offense beyond a reasonable doubt and says correctly that the intent may be inferred from the circumstances and conduct of the parties. The instructions also stated that the jurors would have to "gather" the intent of the person from the character of the act. Reading the instructions in their entirety, the Court found that the jury should not have been misled.

5. The statement to the effect that an innocent intent is no justification or excuse for a wrongful act knowingly or inten-

tionally committed is certainly confusing but not per se erroneous. It has no connection with the rest of the instruction on inferences or guilt by association. Furthermore, it does not appear to deal in any way with the realities of the case, because no defendant admitted the commission of a wrongful act and claimed innocent intent. The defendants have not objected to this language in the trial court or the Court of Appeals. But the language comes within the general sweep of the matter under consideration, and the question was addressed by the Court. The statement seems to be internally self-contradicting and perhaps meaningless. How can there be innocent intent in a wrongful act knowingly and intentionally committed? Or how can an act knowingly and intentionally committed with innocent intent be a wrongful act? Under these conditions it is difficult to visualize any direct negative effect resulting from this language, although the Court has observed, but not decisionally, that the instruction given tends to negate the element of intent. With the general thrust of the instructions in their entirety in this case, any tendency to negate the element of intent is more than overcome. The jury was instructed that the state is required to prove "each and every" element of the offense beyond a reasonable doubt and that for conspiracy the second element is that the particular defendant specifically intended to become a part of that agreement; the latter point was twice repeated. As to the intent to deliver, the jury was told that the state must prove that the defendant intended to commit or assist in committing the crime, that the person making the delivery knew that he was delivering heroin, and that he was fully conscious and intended to do so at the time of delivery.

6. The instruction concerning the presumption that a person intends the natural consequences of his acts and on "innocent intent" should not be given again, but the Court's disapproval does not require a finding of reversible error in this case because the instructions in their entirety removed the possibility that the jury would believe the element of intent was negated, the previous case on this issue did not hold this instruction reversibly erroneous but ordered that it not be given upon retrial, that case was decided after this case was tried, and the previous decision was made on another issue, so is not controlling precedent for this case. However, the bench and bar are strongly urged to recognize that the words and phrases complained of here are suspect words signaling probable exception and appeal. They mean wasted time, trouble for everyone and the delay of justice and should not be used again.

78 Mich App 246; 259 NW2d 443 (1977) reversed in part, affirmed in part.

OPINION OF THE COURT

1. CRIMINAL LAW — INSTRUCTIONS TO JURY — INTENT — PRESUMP-
TIONS — BURDEN OF PROOF.

An instruction to the jury in a criminal case that a person is
presumed to intend the natural consequences of his actions
unless the testimony satisfies the jury of something else vio-
lates the requirement of the Fourteenth Amendment that the
state prove every element of a criminal offense beyond a
reasonable doubt because the jury may interpret the presump-
tion either as conclusive or as shifting the burden of persuasion
(US Const, Am XIV).

2. CRIMINAL LAW — INSTRUCTIONS TO JURY — INTENT — PRESUMP-
TIONS — DUE PROCESS.

Whatever significance the jury may attach to an instruction in a
criminal case that a person is presumed to intend the natural
consequences of his actions unless the testimony satisfies the
jury of something else, the instruction cannot survive constitu-
tional challenge; the potential hazard of the presumption lan-
guage is not removed by other correct instructions to the jury
dealing with the presumption of innocence afforded the accused
and the state's burden of proving every element of the offense
beyond a reasonable doubt (US Const, Am XIV).

3. CRIMINAL LAW — INSTRUCTIONS TO JURY — PRESUMPTIONS —
BURDEN OF PROOF.

An instruction to the jury in a criminal case on the presumptive
effect of a defendant's acts "unless the testimony satisfies you
of something else" has the potential for misleading the jury
with respect to the requirement that the government must
prove every element of an offense beyond a reasonable doubt; if
an inference from a fact or set of facts must be overcome with
opposing evidence, then the inference becomes a presumption
and places a burden on the accused to overcome the presump-
tion.

4. CRIMINAL LAW — INSTRUCTIONS TO JURY — INTENT — BURDEN OF
PROOF — DUE PROCESS.

An instruction to the jury in a criminal case on the presumptive
effect of a defendant's acts "unless the testimony satisfies you
of something else" creates the possibility that the jury may
interpret the instruction as a burden-shifting presumption, and
is therefore unconstitutional (US Const, Am XIV).

5. Criminal Law — Instructions to Jury — Intent — Burden of
   Proof — Due Process.

   An instruction to the jury in a criminal case that "wrongful acts
   knowingly or intentionally committed can neither be justified
   nor excused on the ground of innocent intent" tends to negate
   the intent element of the crime charged; because the instruc-
   tion may reasonably be construed by the jury as shifting the
   burden of proof from the prosecution to the defendants, it is
   unconstitutional (US Const, Am XIV).

6. Criminal Law — Instructions to Jury — Constitutional Law
   — Federal Constitutional Right.

   The Supreme Court looks first to Federal authority for guidance
   in fashioning a remedy for erroneous jury instructions that rise
   to Federal constitutional proportions, because the question is a
   Federal question (US Const, Am XIV).

7. Criminal Law — Constitutional Law — Harmless Error.

   The violation of a Federal constitutional right does not require
   automatic reversal of a criminal conviction in every case; only
   errors affecting the substantial rights of the defendant merit
   reversal (US Const, Am XIV).

8. Criminal Law — Constitutional Law — Harmless Error.

   A reviewing court, before holding a Federal constitutional error
   to be harmless, must be able to declare a belief that it was
   harmless beyond a reasonable doubt.

9. Criminal Law — Instructions to Jury — Remedies — Constitu-
   tional Law — Federal Constitutional Right.

   Automatic reversal of a conviction because of instructions to the
   jury which are erroneous under the Federal constitution is not
   required without regard to the circumstances of the case in
   which they were given; however, the Supreme Court of Michi-
   gan might, as a matter of Michigan constitutional law or in the
   exercise of its supervisory power, adopt a more stringent rem-
   edy to protect against the continued use of improper instruc-
   tions after the disapproval of them by that Court and by the
   Supreme Court of the United States (US Const, Am XIV).

10. Criminal Law — Instructions to Jury — Constitutional Law
    — Harmless Error.

   Constitutional errors in instructing the jury which in the setting
    of a particular case are unimportant and insignificant do not
    require automatic reversal of a conviction; in determining what
    effect an erroneous instruction has upon the validity of the
    conviction, recognition must be given to the fact that a judg-

ment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge.

11. DRUGS AND NARCOTICS — DELIVERY — CONSPIRACY TO DELIVER — INSTRUCTIONS TO JURY — INTENT — INFERENCES.

Constitutionally erroneous instructions on the presumptive effect of the defendant's acts on the issue of intent in a trial for conspiracy to deliver heroin and delivery of heroin were harmless beyond a reasonable doubt where the defendant's criminal intent was unequivocally manifest from the statements attributed to him by two prosecution witnesses, the evidence is that the defendant engaged in a course of conduct over an extended period of time, the case against him turned essentially on the credibility of the prosecution's chief witness, and the defense was predicated mainly on the defendant's denial that he had said and done the things attributed to him (MCL 335.341[1][a], 750.157a; MSA 18.1070[4][1][a], 28.354[1]).

12. DRUGS AND NARCOTICS — DELIVERY — CONSPIRACY TO DELIVER — INSTRUCTIONS TO JURY — INTENT — INFERENCES.

It cannot be said that a constitutionally erroneous jury instruction on the presumptive effect of a defendant's acts on the issue of intent was harmless beyond a reasonable doubt where the prosecution's case against a defendant charged with delivery of heroin and conspiracy to deliver heroin consisted of little direct evidence of illegal activity, the defendant denied any involvement in narcotics transactions and sought to portray himself as an innocent person who had stumbled into incriminating circumstances, and the primary question for the jury was whether the defendant was part of a concert of action to deliver heroin and whether he delivered heroin; in light of the slender evidence of the defendant's involvement, one cannot confidently say that the verdict of guilty was not influenced by the erroneous instructions which reflected a bias against him and tended to negate the prosecutor's burden of proof and shift some of the burden to the defendant (MCL 335.341[1][a], 750.157a; MSA 18.1070[4][1][a], 28.354[1]).

OPINION BY WILLIAMS, J.

13. CRIMINAL LAW — INSTRUCTIONS TO JURY — FAIR TRIAL.

*Instructions to the jury are to be reviewed in their entirety, rather than as isolated sentences, to determine whether the defendant received a fair trial.*

14. Criminal Law — Instructions to Jury — New Trial.

　A new trial will not be granted for an error in the instructions to the jury where the instruction complained of is not strictly correct but the court can clearly see that the jury could not have been misled by it.

15. Criminal Law — Instructions to Jury — Intent — Inferences.

　An instruction to the jury that they may infer a defendant's intent from his actions unless the testimony satisfies them of "something else" is not reversibly erroneous where the clear, positive and strong thrust of the instructions in their entirety is that no defendant has an obligation to prove anything, a defendant is presumed innocent throughout the trial, and the state is required to prove "each and every element" of the offense beyond a reasonable doubt; the instructions in their entirety negative the possibility of an unfair trial.

16. Criminal Law — Instructions to Jury — Intent — Presumptions.

　An instruction to the jury that "the law presumes" that a person intends the natural, probable and legitimate consequences of his acts is not reversibly erroneous where the instructions also state that the "presumption" is not necessarily conclusive, that the intent may be "inferred" from the circumstances and conduct of the parties, and that the jurors would be required to "gather" the intent of the defendant from the character of the act, and the instructions in their entirety stress that the prosecutor must prove "each and every" element of the offense beyond a reasonable doubt.

17. Criminal Law — Instructions to Jury — Intent.

　Any tendency to negate the element of intent by an instruction to the jury that an innocent intent does not justify or excuse wrongful acts which are knowingly or intentionally committed is more than overcome where the general thrust of the instructions in their entirety removed the possibility the jury would believe the intent element was negated.

18. Criminal Law — Instructions to Jury — Intent.

　Instructions to the jury concerning the presumption that a person intends the natural consequences of his acts and that an innocent intent does not justify or excuse wrongful acts which are knowingly or intentionally committed should not be given because they tend to negate the proper instructions on the element of intent.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, and *Michael R. Mueller* and *Larry L. Roberts,* Assistants Prosecuting Attorney, for the people.

State Appellate Defender (by *P. E. Bennett)* for defendants.

RYAN, J. The question presented is whether jury instructions, "unless the testimony satisfies you of something else * * * [t]he law presumes that every man or woman intends the natural, the probable, and the legitimate consequences of his or her own willful and voluntary acts", is reversible error.

We conclude that the instructions may have been interpreted by the jury as a burden-shifting presumption and are therefore unconstitutional. US Const, Am XIV; Const 1963, art 1, § 17. Upon careful examination of the entire record, however, we find that as to defendant Wright, the erroneous instructions were harmless beyond a reasonable doubt and his conviction is reinstated. The same cannot be said of the instructions' effect on defendant Perez's case, however, and the reversal of his conviction is affirmed.

I

Defendants Arnold Wright and Salvador Perez, and their codefendant Carol McCuin,[1] were charged with conspiracy to deliver heroin and delivery of heroin. MCL 750.157a; MSA 28.354(1). MCL 335.341(1)(a); MSA 18.1070(41)(1)(a). Wright was charged with three counts of delivery, Perez with one count of delivery, and McCuin with five

---

[1] Defendant McCuin has not pursued an appeal from her conviction.

counts of delivery. All three defendants were charged with conspiracy under a separate count.

All three defendants were jointly tried and each was convicted as charged. Wright was sentenced to four concurrent terms of 13 years, 4 months to 20 years imprisonment. Perez was sentenced to five years probation on condition that he leave the country within two days after which his probation would be suspended and McCuin, whose case is not before us, was sentenced to three years probation.

A

The prosecution's theory of the case was that Wright was a dope dealer who, on one occasion, was supplied heroin by Perez and for whom Mc-Cuin made actual sales of heroin to police undercover agents. The prosecution alleged that McCuin personally delivered heroin on five separate occasions either to undercover Police Officer Fleming or to informant Thomas Moss.

During his opening argument, the prosecutor admitted that neither Wright nor Perez ever personally passed any heroin to Fleming or Moss, and that it was the prosecution's theory that Wright and Perez aided and abetted McCuin in the criminal enterprise.

Although the conspiracy to deliver heroin allegedly lasted from September 5, 1974 to October 3, 1974, the record fails to disclose any specific reference to Perez by the other alleged members of the conspiracy during that time. Perez's only encounter with the other two defendants occurred on the night of September 27-28 when he came to McCuin's home, stayed for a short time and left just prior to the consummation of the last charged delivery of heroin by McCuin to Moss.

The prosecution's case rested chiefly on the testimony of a paid informant, Moss, and an undercover police officer, Fleming, both of whom remained under police surveillance throughout the investigation. Moss had a history as a narcotics dealer himself and admitted cooperating with police in the investigation of Wright and McCuin because he bore a grudge against Wright stemming from an earlier sale of "bad" drugs to him by Wright.

The prosecution presented the following case:

On September 12, 1974, informant Moss, under the direction of Detroit Police Department narcotics officers, went to McCuin's residence and purchased a quantity of heroin. McCuin told Moss that if he wanted more he should come back because Wright was expecting "a real good package".

The next day, September 13, Moss, while under the surveillance of narcotics officers, met Wright at a bar where Wright told him to go to McCuin's residence where he could get what he wanted (an ounce) from McCuin. Moss did so and received $650 worth of heroin from McCuin. At one point during the transaction, McCuin went upstairs and then returned, whereupon the delivery was completed.

The third sale of narcotics occurred five days later, on September 18. Moss, in the company of undercover Police Officer Fleming, went to the same bar and met defendant Wright. Moss introduced Fleming as his girlfriend and explained to Wright that she would be making purchases of narcotics for him from time to time. Wright suggested that Moss take Fleming over to meet McCuin. Moss agreed, stating that he wished to purchase an ounce of heroin now and possibly an

eighth (of a kilo) later in the week. Wright once again directed Moss to McCuin's address and stated that it would cost Moss about $1,600 for the purchase of an ounce of the narcotic. Moss, having only $1,200 of police funds with him at the time, asked Wright if he might have $400 credit. Wright agreed. During the conversation, Wright said he was "copping from some Mexicans in Delray".

Moss and Fleming proceeded to McCuin's home where McCuin supplied Moss with an ounce of heroin for $1,200 after being told by Moss that Wright had agreed to extend him $400 credit. Moss was then directed by McCuin to take a "dime spoon" of heroin to Wright at the bar, which Moss did.

On September 20, Officer Fleming went to Mc-Cuin's home alone and bought an ounce of heroin for $1,600. The transaction had been arranged by Moss in a phone call to McCuin.

According to the prosecution's evidence, defendant Perez's first appearance on the scene occurred at the time of the fifth narcotics transaction, September 27. On that date, Moss and Officer Fleming went to McCuin's residence in order to purchase an eighth of a kilo of heroin (approximately four ounces). After being asked whether Wright was present in the house, McCuin answered that he was not. McCuin placed a couple of phone calls after which she stated that Wright would arrive in a few minutes. Shortly after Wright's arrival, he and Moss left the McCuin home and went to the bar where the parties had rendezvoused earlier. There Wright explained that he was waiting for a phone call from his "connect" —some Mexicans from Delray with whom he was dealing. He said he didn't know how much the narcotics would cost because his regular "connect"

might not receive his "package" which would require him to deal with the "connect's" nephew who might hold out for a higher price. Wright told Moss to multiply 1600 times 4 ounces and add a bit more in order to determine the cost of dealing with the nephew; $1,600 was the price of an ounce.

Officer Fleming testified that she remained at McCuin's residence after Wright and Moss left and that no one entered or left the home while Wright and Moss were gone. From 5:30 p.m. until 10:30 p.m. Wright and Moss were constantly in one another's immediate presence, except for a few moments just prior to their return to the McCuin residence at 10:30. The two had been driving around when Wright stopped the car in front of an unidentified house and went to the door. In the dark, Moss observed Wright from the car. Moss did not see Wright enter the house and did not see anyone come to the door. After a few moments Wright returned to the car and then drove to McCuin's residence.

After the two arrived at McCuin's residence, Wright received a phone call after which he told Moss that delivery would be in about 20 minutes. Wright then went upstairs while Moss went to his car and retrieved $6,600 which he gave to McCuin who then followed Wright upstairs. Shortly thereafter, Wright came down and told Moss that they would have to return to the bar. The two left only to return to the McCuin home about 20 minutes later. Observing that there was a Thunderbird in the driveway (owned by Perez's wife), Wright stated that the "connect" was there and Moss could get his "package" in the next few minutes.

Perez and his wife, both of Mexican descent, had arrived shortly after Wright and Moss had departed the second time. Perez and McCuin were

upstairs and Officer Fleming and Perez's wife were downstairs when Wright and Moss entered the house. Wright went upstairs and returned shortly, followed by Perez and McCuin. The prosecution presented no testimony as to what transpired while the three were upstairs. The record reveals no conversation whatever between Perez and Moss or Fleming. Perez and his wife left the house. Wright then pointed upstairs and McCuin went up, returning with three coin envelopes containing four ounces of heroin and handed them to Moss.

The next day, September 28, the police recorded a telephone conversation between Wright and Moss wherein Wright asked that Moss pay him the money he still owed him. Payment was necessary, Wright said, because he had received a phone call[2] soon after Moss had left McCuin's house the day before in which the caller demanded the payment of the $1,100 which Wright had been "short" and which he acknowledged was owed the caller. The prosecution's contention was that Wright could only have been referring to Perez who was the only person to fit into this time sequence and attendant circumstances.

On October 2, Moss and Fleming again went to McCuin's home with the intention of buying four ounces of heroin. McCuin tried to locate Wright but could not. Moss left $6,800 with McCuin and departed with Fleming only to return later the same day, ostensibly to recover the money. Just about that time Wright arrived and persuaded Moss to leave the money, saying that he would call Moss when "the package" arrived. No call was forthcoming and the next day Moss returned to

_____

[2] We express no opinion concerning the propriety of tape recordings by police of this phone call. This issue is left for Court of Appeals consideration upon remand.

McCuin's house and recovered the money. No narcotics were transferred on this occasion.

Defendant Wright, testifying in his own defense, admitted that he knew Moss but denied setting up narcotics purchases for Moss from McCuin at any time. Wright said that he had been "going with" McCuin for seven or eight years but didn't know if she had been selling narcotics. He testified that on the night of September 27-28 he had been with Moss but the two of them had been gambling and that there had been no discussion about drugs. He said that when defendant Perez came to McCuin's home Perez had asked only to borrow some money from Wright. Wright explained the telephone conversation of September 28, concerning the money owed to Wright by Moss, as dealing only with a gambling debt owed by Moss to Wright and $1,100 owed by Wright to a third person to cover his own gambling debt.

In his closing argument, defendant Wright's attorney focused primarily upon the credibility of Moss in view of the informant's admitted grudge against Wright and the discrepancies in his testimony.

Defendant Perez testified in his own behalf and stated that he had never sold narcotics and had not been convicted of any prior drug offenses. He testified that he had known Wright and that on the night of September 27 had gone with his wife to McCuin's house to borrow $200 from Wright. He admitted accompanying Wright upstairs but claimed it was upon Wright's suggestion and that they discussed the loan. He testified that Wright refused to loan him the money and told him he could not talk longer because he had people waiting downstairs. Perez and his wife then left.

Counsel for Perez argued that Perez was a vic-

tim of circumstances; that he happened to walk into a home for a completely innocent purpose at a time when the police were running an undercover investigation. Counsel emphasized that during the entire period that his codefendants were under surveillance and up until the visit to the McCuin residence for the loan conversation with Wright, nobody ever saw Perez nor was his name mentioned in any conversation. He argued that there were numerous occasions during which Wright could have secured from other sources the drugs he sold to Moss.

B

In his charge to the jury the trial judge instructed, in part, as follows:

"The question of intent is one that is hard to establish directly, because grown persons do not always disclose the object they have in view in any acts in which they may indulge. And you as jurors will have to gather the intent of the individual from the character of the act, from the circumstances surrounding it, and from conduct of a like character which may appear as tending to aid you in finding and discovering his or her intent.

"But in connection with all this, *unless the testimony satisfies you of something else,* you are warranted in holding a party responsible for the natural, the probable, and the legitimate consequences of his or her acts. The intent may be presumed from the doing of a wrongful or a fraudulent or an illegal act. But this inference or this presumption is not *necessarily* conclusive.

"*The law presumes that every man or woman intends the natural, the probable, and the legitimate consequences of his or her own willful and voluntary acts. And wrongful acts knowingly or intentionally commit-*

*ted can neither be justified nor excused on the ground
of innocent intent."* (Emphasis added.)

Defense counsel raised no objection to this por-
tion of the charge. The jury found each defendant
guilty as charged.

## II

Our threshold inquiry is whether the challenged
jury instructions, individually or in their cumula-
tive effect, are erroneous. This question need not
detain us long.[3]

## A

The United States Supreme Court, in a case
decided subsequent to the submission of the in-
stant case, found language similar to the "pre-
sume" instruction challenged here to be constitu-
tionally defective, even in the context of a com-
pletely correct jury charge on the presumption of
innocence and the state's burden of proving a
guilty state of mind beyond a reasonable doubt.

---

[3] Several panels of the Michigan Court of Appeals, other than that
whose decision we review here, have grappled with the issue these
instructions raise and have reached diametrically opposed results.

Reversible error: *People v Wright,* 78 Mich App 246; 259 NW2d 443
(1977) (instant case); *People v Jordan,* 51 Mich App 710; 216 NW2d 71
(1974); *People v Smith,* 67 Mich App 145; 240 NW2d 475 (1976) (not
controlling opinion).

Disapproved: *People v Thornton,* 80 Mich App 746; 265 NW2d 35
(1978); *People v Lewis Robinson,* 70 Mich App 606; 247 NW2d 308
(1976); *People v Lutzke,* 68 Mich App 75; 241 NW2d 765 (1976)
(dissent).

No reversible error: *People v Maynard,* 84 Mich App 437; 269
NW2d 631 (1978); *People v Beard,* 78 Mich App 636; 261 NW2d 27
(1977); *People v Penn,* 71 Mich App 517; 248 NW2d 602 (1976)
(dissent); *People v Ross,* 69 Mich App 705; 245 NW2d 335 (1976);
*People v Cousins,* 65 Mich App 709; 238 NW2d 378 (1975); *People v
Rivera,* 61 Mich App 427; 232 NW2d 727 (1975); *People v Adams,* 48
Mich App 595; 210 NW2d 888 (1973).

*Sandstrom v Montana,* 442 US 510; 99 S Ct 2450; 61 L Ed 2d 39 (1979). The Court was confronted *only* with the jury instruction, "the law presumes that a person intends the ordinary consequences of his voluntary acts". The narrow issue framed was whether such an instruction violated the Fourteenth Amendment's due process requirement that the state prove every element of a criminal offense beyond a reasonable doubt. See *In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970). The Court held that because the jury *may have* interpreted the challenged presumption *either* as conclusive or as shifting the burden of persuasion, the instruction was unconstitutional. Citing *Morissette v United States,* 342 US 246; 72 S Ct 240; 96 L Ed 288 (1952); *United States v United States Gypsum Co,* 438 US 422; 98 S Ct 2864; 57 L Ed 2d 854 (1978); *Mullaney v Wilbur,* 421 US 684; 95 S Ct 1881; 44 L Ed 2d 508 (1975).

We share the Supreme Court's uncertainty whether a jury charged with such an instruction would interpret the presumption as conclusive or as a burden-shifting device. Our inclination is to accept the latter as the more probable result in the case before us in which the jury was given essentially the same instruction, particularly in view of the fact that the trial judge compounded the potential for jury confusion by his added statement that "intent may be presumed from the doing of a wrongful or a fraudulent * * * act * * * [b]ut this inference or this presumption is not necessarily conclusive". Besides injecting the unexplained notion that the instruction describes an inference (which can never be "conclusive"), the language suggests that there are cases where the presumption is conclusive. Moreover, the jury was not told whether this case was "necessarily" one of them.

Whatever the significance the jury may have attached to the presumption language, we find that the instruction cannot survive constitutional challenge.[4]

The Supreme Court in *Sandstrom* explained:

"We do not reject the possibility that some jurors may have interpreted the challenged instruction as permissive, or, if mandatory, as requiring only that the defendant come forward with 'some' evidence in rebuttal. However, the fact that a reasonable juror could have given the presumption conclusive or persuasion-shifting effect means that we cannot discount the possibility that Sandstrom's jurors actually did proceed upon one or the other of these latter interpretations. And that means that unless these kinds of presumptions are constitutional, the instruction cannot be adjudged valid." *Id.,* p 519. (Footnote omitted.)

The constitutional flaw inherent in an instruction of this nature is described in no uncertain terms by Mr. Justice Brennan in his opinion for a unanimous Court:

"As in *Morissette* and *United States Gypsum Co,* a conclusive presumption in this case would 'conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime,' and would 'invade [the] factfinding function' which in a criminal case the law assigns solely to the jury. The instruction announced to David Sandstrom's jury may well have had exactly these consequences. Upon finding proof of one element of the crime (causing death), and of facts insufficient to estab-

---

[4] This Court's only prior occasion to review the challenged instructions was in *People v Pepper,* 389 Mich 317; 206 NW2d 439 (1973), where, without determining the abstract validity of the instruction, we found that the language used had no applicability to the circumstances of the case involved. Because the instructions, read as a whole, did not present to the jury all the law of the case, we reversed. *Id.*

lish the second (the voluntariness and 'ordinary conse-
quences' of defendant's action), Sandstrom's jurors
could reasonably have concluded that they were di-
rected to find against defendant on the element of
intent. The State was thus not forced to prove 'beyond a
reasonable doubt * * * every fact necessary to consti-
tute the crime * * * charged,' 397 US, at 364, and
defendant was deprived of his constitutional rights as
explicated in *Winship.*

"A presumption which, although not conclusive, had
the effect of shifting the burden of persuasion to the
defendant, would have suffered from similar infirmities.
If Sandstrom's jury interpreted the presumption in that
manner, it could have concluded that upon proof by the
State of the slaying, and of additional facts not them-
selves establishing the element of intent, the burden
was shifted to the defendant to prove that he lacked the
requisite mental state. Such a presumption was found
constitutionally deficient in *Mullaney v Wilbur,* 421 US
684 (1975)." *Id.,* pp 523-524.

We find this holding by the Supreme Court
controlling in the instant case.[5]

Noteworthy is the Supreme Court's footnote
comment in *Sandstrom* that it was not judging the
validity of the challenged instruction in isolation
from the entire charge, and that the potential
hazard of the jury interpreting the presumption as
feared was not removed by other correct instruc-
tions given at trial dealing with the presumption
of innocence afforded the accused and the state's
burden of proving each and every element beyond
a reasonable doubt. *Id.,* pp 518-519, fn 7.[6]

---

[5] Michigan courts adhere to the *Winship* "beyond a reasonable
doubt" standard. See *People v Rios,* 386 Mich 172; 191 NW2d 297
(1971); *People v Morrin,* 31 Mich App 301; 187 NW2d 434 (1971)
(LEVIN, J.). We adopt as persuasive, although not controlling, *Sand-
strom's* Federal due process analysis as it applies to the Michigan
Constitution's Due Process Clause as a matter of state constitutional
law. Const 1963, art 1, § 17.

[6] "7The potential for these interpretations of the presumption was
not removed by the other instructions given at the trial. It is true

Foreclosed by this observation is the prospect, as suggested by the appellant in this case, that the error in the challenged instruction is vitiated by other correct instructions given the jury concerning the prosecution's burden of proof contextually unrelated to the impact of the presumption language. On the constitutionally vital point at issue here, we adopt the *Sandstrom* rationale. Authorities which limit the inquiry to reading jury instructions in their entirety in order to determine whether the defendant received a fair trial are not dispositive.[7] See *People v Dupie,* 395 Mich 483; 236 NW2d 494 (1975); *People v Dye,* 356 Mich 271; 96 NW2d 788 (1959).

## B

In addition to the constitutionally impermissible instructions on presumed intent, the trial court erroneously instructed the jury in two other respects.

---

that the jury was instructed generally that the accused was presumed innocent until proved guilty, and that the State had the burden of proving beyond a reasonable doubt that the defendant caused the death of the deceased purposely or knowingly. App 34-35; Brief for Respondent 21. But this is not rhetorically inconsistent with a conclusive or burden-shifting presumption. The jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied. For example, if the presumption were viewed as conclusive, the jury could have believed that although intent must be proved beyond a reasonable doubt, proof of the voluntary slaying and its ordinary consequences constituted proof of intent beyond a reasonable doubt." (Citations omitted.)

[7] The harmless error standard for determining the prejudicial effect of this constitutionally invalid instruction, see text Part III, *infra,* requires us to go beyond merely weighing the impact of the challenged instruction in the context of the charge as a whole. We must also carefully scrutinize the evidence adduced in each case. The validity of those cases which have limited inquiry to a review of the jury charge in its entirety, which include the large majority of the Michigan Court of Appeals decisions cited in fn 3, is doubtful, in view of *Sandstrom.*

The first of the additional challenged instructions reads: "But in connection with all this, *unless the testimony satisfies you of something else,* you are warranted in holding a party responsible for the natural, the probable, and the legitimate consequences of his or her acts." (Emphasis added.) The statement was made by the trial judge immediately before his instruction on presumed intent.

Similar instructions have generated extensive criticism by numerous courts, yet some trial courts persist in giving the instruction, thus triggering repeated appellate review resulting in an anfractuous line of precedent.[8] Perhaps the least severe of the criticisms leveled at the instruction is that it is " 'at best clumsy and, if taken alone, confusing' ". *United States v Kirk,* 584 F2d 773 (CA 6, 1978), quoting *United States v Denton,* 336 F2d 785, 788 (CA 6, 1964). A more accurate characterization of the instruction is that it "has the potential for misleading the jury with respect to the requirement that the government must prove every element of an offense beyond a reasonable doubt". *United States v Robinson,* 545 F2d 301, 306 (CA 2, 1976). See, also, *United States v Reeves,* 594 F2d 536 (CA 6, 1979); *United States v Garrett,* 574 F2d 778 (CA 3, 1978); *United States v Chiantese,* 560 F2d 1244 (CA 5, 1977); *Menard v State,* 578 P2d 966 (Alas, 1978).

The vice of the instructions is thoroughly explained in an oft-quoted opinion in *Mann v United States,* 319 F2d 404, 409 (CA 5, 1963):

"When the words, 'So unless the contrary appears from the evidence' were introduced, the burden of proof

[8] The history of this instruction in the Fifth Circuit Court of Appeals and its use in combination with one or more of the other instructions challenged herein is set forth in *United States v Chiantese,* 560 F2d 1244 (CA 5, 1977).

was thereupon shifted from the prosecution to the defendant to prove lack of intent. If an inference from a fact or set of facts must be overcome with opposing evidence, then the inference becomes a presumption and places a burden on the accused to overcome that presumption. Such a burden is especially harmful when a person is required to overcome a presumption as to anything subjective, such as intent or wilfulness, and a barrier almost impossible to hurdle results."

We are convinced that by instructing the jury that "unless the testimony satisfies you of something else", the trial court created the prospect that the jury "may have interpreted the judge's instruction as * * * a burden-shifting presumption", *Sandstrom, supra,* p 524, and the instruction is therefore unconstitutional.[9]

The second additional challenged instruction was the trial court's advice that "wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent". The Court of Appeals did not consider the effect this instruction might have had in this case, very likely because of its holding that the two previously mentioned instructional errors required reversal. In other jurisdictions where this instruction has been given together with the presumed intent instruction in the same charge, no special significance has been separately attached to it. *United States v Netterville,* 553 F2d 903 (CA 5, 1977); *Estes v United States,* 335 F2d 609 (CA 5, 1964). This Court has observed on prior occasion, however, that such an instruction "tended to neg-

---

[9] We cannot say that the use of this instruction, together with the presumed intent instruction in the same charge, add up to anything greater than a potential for shifting the burden of proof as criticized in *Sandstrom.* The combined effect of the two instructions would likely be to alleviate the danger that the jury might have found the presumption to be mandatory, the more serious hazard under *Morissette.*

ate the intent element" of the crime charged. *People v Holcomb,* 395 Mich 326, 333; 235 NW2d 343 (1975).[10] We find that because this instruction may reasonably have been construed by the jury as shifting the burden of proof from the prosecution to the defendants, it is unconstitutional.

### III

Our decision that the challenged instructions are constitutionally invalid does not resolve the issue of whether either of the defendants are entitled to a reversal of their convictions and a new trial.

In fashioning a remedy for erroneous jury instructions that rise to Federal constitutional proportions, we look first to Federal authority for guidance. "Whether a conviction for crime should stand when a state has failed to accord Federal constitutionally guaranteed rights is every bit as much of a Federal question as what particular Federal constitutional provisions themselves mean, what they guarantee, and whether they have been denied." *Chapman v California,* 386 US 18, 21; 87 S Ct 824; 17 L Ed 2d 705 (1967).

As an initial matter, the violation of a Federal constitutional right does not necessarily require automatic reversal. Only errors affecting the "substantial rights" of the defendant merit reversal of a criminal conviction. *Chapman, supra,* 21-22. Before a Federal constitutional error can be held harmless, however, the reviewing court "must be

---

[10] It is noteworthy that nearly the exact set of instructions challenged here was present in *Holcomb.* Yet, the defendant in *Holcomb* limited his challenge only to that portion presently under discussion and this Court expressed no opinion on the effect of the entire instruction.

able to declare a belief that it was harmless beyond a reasonable doubt". *Id.,* 24.

Since articulating the *Chapman* standard of harmless constitutional error, the Supreme Court has not stated in any case that a constitutionally invalid jury instruction requires automatic reversal of a conviction without regard to the circumstances of the case in which it was given.

In *Sandstrom, supra,* the United States Supreme Court specifically left unresolved the question whether, despite the possibility that the jury may have relied upon burden-shifting instructions, the trial judge's flawed advice to the jury constituted, or could ever have constituted, harmless error. The defendant in *Sandstrom* argued that an unconstitutional jury instruction on an element of the crime can be nothing other than plain error requiring reversal in every case in which it is given.[11] *Id.,* p 526.

Two recent indications of the Supreme Court's approach to potentially misleading jury instructions are manifested by the several opinions in *Taylor v Kentucky,* 436 US 478; 98 S Ct 1930; 56 L Ed 468 (1978), and *Kentucky v Whorton,* 441 US 786; 99 S Ct 2088; 60 L Ed 2d 640 (1979). The majority in *Taylor* found that the failure to give a requested instruction on the accused's presumption of innocence diluted the prosecution's duty to establish guilt by probative evidence beyond a reasonable doubt. 436 US 485-486. The omitted in-

---

[11] Citing *United Brotherhood of Carpenters & Joiners of America v United States,* 330 US 395; 67 S Ct 775; 91 L Ed 973 (1947); *Bollenbach v United States,* 326 US 607; 66 S Ct 402; 90 L Ed 350 (1946). We are not certain that *Bollenbach* can be correctly cited as setting forth an automatic reversal rule. The jury in that case expressed difficulties with the effect of a presumption on a critical element of the charge upon which no direct evidence was available. The trial judge then reinstructed the jury with the offending instruction. Under "the circumstances of this case" the Court would not find the error to be harmless. 326 US 614.

struction was not a requirement of constitutional dimensions in the majority's view, but the effect of failure to give it depended instead on the facts of each case. *Whorton, supra.* Enlightening, in terms of our analysis of the case before us, is the dissenting opinion in *Whorton* which took a less tolerant approach and would have required inclusion of the instruction upon request in every jury charge as a matter of constitutional law. Yet, even in taking this approach, the dissenting members of the Court would not have adopted a plain-error rule concerning a jury charge which violated Federal constitutional principles:

"There may be cases where the failure to give such an instruction could not have affected the outcome of the trial. If that conclusion can be drawn beyond a reasonable doubt, failure to give the instruction would be harmless error. *Cf. Chapman v California,* 386 US 18; *Harrington v California,* 395 US 250 [89 S Ct 1726; 23 L Ed 2d 284 (1969)]. Since the Kentucky Supreme Court did not consider this possibility, I would vacate its judgment and remand the case to that court, but only for consideration of whether the failure to give the instruction in the circumstances presented here was harmless error." (Stewart, J., p 791.) (Footnote omitted.)

We conclude that the error in charging the jury with the instructions disapproved today does not automatically dictate reversal of the defendants' convictions. That conclusion is based upon our belief that such instructions are not grounds for automatic reversal as a matter of Federal law.[12]

---

[12] Our conclusion that the error in charging the jury with the erroneous instructions here in question does not require automatic reversal is consistent with the virtually unanimous approach of Federal circuit courts of appeal which have addressed the issue. *E.g., United States v Reeves,* 594 F2d 536 (CA 6, 1979); *United States v Littlebear,* 531 F2d 896 (CA 8, 1976); *United States v Eaglin,* 571 F2d

Should the United States Supreme Court ultimately decide that *Sandstrom* error is never harmless, we would, of course, be obligated to implement such a rule.

We regard harmless error analysis as appropriate in this case where the trial preceded authoritative disapproval of these instructions by this Court and the United States Supreme Court. We do not, however, foreclose the possibility that we might, as a matter of Michigan constitutional law or in the exercise of our supervisory power, adopt a more stringent approach to protect against continued use of these improper instructions should they recur in post-*Sandstrom,* post-*Wright*-and-*Perez* cases.

Whether a different rule should be announced for such cases should not be decided in this case involving a pre-*Sandstrom,* pre-*Wright*-and-*Perez* trial. Our conclusion that harmless error analysis may be applied in this case does not, however, detract from our concern for the extent of judicial time and public and private funds spent, and individual liberties lost, while our appellate courts reject charges containing burden-shifting type instructions. The ultimate responsibility of correctly instructing the jury rests with the trial judge. These considerations, coupled of course with the more vital fact that the instructions disapproved today are unfair, move us to direct that trial courts discontinue the use of such instructions.

---

1069 (CA 9, 1977); *United States v Woodring,* 464 F2d 1248 (CA 10, 1972). Most notable among the decisions refusing to adopt an automatic reversal standard for instructions which may be interpreted as shifting the burden of proof to the accused is *United States v Chiantese,* 560 F2d 1244, 1255 (CA 5, 1977), where the Court stated:

"We refuse to classify the giving of a charge in violation of paragraph 1, whether objected to or not, as the type of error which will automatically produce reversal. If, despite our action today, the error should recur, the weighing of its harm to the accused shall remain a judicial matter to be resolved in the context of each case where it occurs."

### IV

It remains for us to determine whether the unobjected-to erroneous instructions in the instant case can be said to be "harmless beyond a reasonable doubt". [13] *Chapman, supra,* 24.

The watershed for determining whether an erroneous jury instruction affected the outcome of a trial is the harmless-error rule of *Chapman v California, supra.* The purpose of that rule is to "block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial". *Id.,* 22. Constitutional errors in instructing the jury "which in the setting of a particular case are so unimportant and insignificant" do not require automatic reversal of a conviction. *Id.* The harmless-error rule thus recognizes that in determining the effect an erroneous instruction has upon the validity of the defendants' conviction, cognizance must be taken of the fact "that a judgment of conviction is com-

---

[13] Defendants raised no objection to the subject jury instructions, although they were diligent in attacking other aspects of the charge. As a general rule, this Court will not review unobjected-to jury instructions in the absence of manifest injustice. The obvious merit to this rule is that it draws the trial judge's attention to a possibly offensive instruction and allows necessary corrective measures to be taken. See *Lopez v United States,* 373 US 427; 83 S Ct 1381; 10 L Ed 2d 462 (1963); *Allis v United States,* 155 US 117; 15 S Ct 36; 39 L Ed 91 (1894).

However, failure to object should not be made a basis for denying relief in these cases. General instructions of this kind may be part of a judge's customary litany and not the subject of conference discussion with counsel before being given. Unless counsel has become conversant with the judge's customary instructions, the instruction may be given before he has an opportunity to object. Once given, the damage may be irremediable because the judge must repeat the instruction to identify it and then caution the jury to disregard it. Many defense lawyers may regard "cure" by a corrected instruction as no better and perhaps worse than the injury.

Depending on defense objection and assessing case-by-case the harm resulting from the instruction may inadequately deter continued use of the instructions.

monly the culmination of a trial which includes
testimony of witnesses, argument of counsel, re-
ceipt of exhibits in evidence, and instruction of the
jury by the judge". *Cupp v Naughten,* 414 US 141,
147; 94 S Ct 396; 38 L Ed 2d 368 (1973).

A close scrutiny of the facts and circumstances
of each defendant's case, including the quantity
and quality of evidence, leads us to conclude that,
although intent was not a focal point of inquiry in
either case, the instructions affected each defen-
dant differently.

The testimony of informer Moss and undercover
narcotics officer Fleming tended to show that
Wright and Perez had delivered and conspired to
deliver narcotics. Both defendants testified, deny-
ing that they had delivered or conspired to deliver
heroin.

The prosecution's case against defendant Wright
was particularly strong. Wright's criminal intent
was unequivocally manifest from the statements
attributed to him by two prosecution witnesses.
The evidence is that Wright engaged in a course of
conduct over an extended period of time. The case
against him turned essentially on the credibility of
the prosecution's chief witness. The defense was
predicated mainly upon Wright's denial that he
had said and done the things attributed to him. If
the jury believed the testimony of the prosecution
witnesses, Wright's conviction reasonably followed.
See *United States v Reeves,* 594 F2d 536 (CA 6,
1979).[14]

---

[14] The holding of Chief Judge Edwards in *Reeves* is enlightening:

"As to the intent instruction, we hold that a portion of the instruc-
tion given was erroneous and should not be employed. We also hold,
however, that in this case the criminal intent of the person who
robbed this bank was never placed at issue. Appellant's defense was
simply that he was not the person who did it. This issue was clearly
presented to the jury with the burden of proof beyond reasonable
doubt placed squarely upon the government. More than adequate

We conclude that the case against Wright was so overwhelming that, unless we say no violation of *Sandstrom* can constitute harmless error, the conviction must stand. See *Harrington v California,* 395 US 250; 89 S Ct 1726; 23 L Ed 2d 284 (1969).

Because we are convinced beyond a reasonable doubt that the constitutionally erroneous instructions given in his case were harmless, the conviction of Wright is reinstated and the case is remanded to the Court of Appeals for consideration of Wright's other claims of error.

In contrast, the prosecution's case against defendant Perez consisted of little direct evidence of illegal activity. Perez denied any involvement in narcotics transactions and claimed that he had gone to McCuin's house only to borrow money from Wright. He sought to portray himself as an innocent person who had stumbled into incriminating circumstances. The primary question for the jury was whether Perez was part of a concert of action to deliver heroin and whether he delivered heroin in the course of his visit.

Nevertheless, we find that the erroneous instructions require reversal and a trial in *Perez.* The difference between the two cases is that the evidence against Wright is substantial while the evidence of Perez's involvement is tenuous. In light of the slender evidence in *Perez,* one cannot confidently say that the verdict was not influenced by the erroneous instructions which reflected a bias against him and tended to negate the prosecutor's burden of proof and shift some of the burden to Perez.[15]

_____

evidence to support the jury verdict was presented, including three eyewitness identifications, surveillance camera photographs and appellant's fingerprint and palm print left in the bank. Under these circumstances, we find the error in the charge to be harmless beyond reasonable doubt." *Id.,* 537-538.

[15] The suggested Criminal Jury Instruction avoids the imbalance of

As the Supreme Court said in *Bihn v United States,* 328 US 633; 66 S Ct 1172; 90 L Ed 1484 (1946);

"[T]he case against [defendant] was not open and shut. Since the scales were quite evenly balanced, we feel that the jury might have been influenced by the erroneous charge."

See *Bollenbach v United States,* 326 US 607; 66 S Ct 402; 90 L Ed 350 (1946).

We are unable to say that the constitutionally erroneous jury instruction was harmless beyond a reasonable doubt. *Chapman, supra.*

We affirm the Court of Appeals reversal of Perez's conviction. We note, however, that Perez raised

---

the instructions in the instant case.

"The intent with which a person does an act is known [shown?] by the way in which he expresses it to others or indicates it by his conduct. The intent with which a person does an act can sometimes be determined from the manner in which it is done, the method used and all other facts and circumstances, but only if that intent is established by the evidence." 1 Michigan Criminal Jury Instructions (Ann Arbor: Institute of Continuing Legal Education), CJI 3:1:16, p 6-5.

The supplement to 1 Devitt & Blackmar, Federal Jury Practice and Instructions, Civil & Criminal (3d ed) (Cum Supp), § 14.13, p 119, sets forth an acceptable alternative instruction, taken from *United States v Gambina,* 564 F2d 22, 25, fn 2 (CA 8, 1977), which jurors would understand and which is fair to both the prosecution and the defendant:

"Intent may be proved by circumstantial evidence. Indeed, it can rarely be established by any other means. We simply cannot look into the head or mind of another person. It is impossible physically to do that. So, while witnesses may see and hear and so be able to give direct evidence of what a defendant does or fails to do, of course, there can be no eyewitness account of the state of mind with which the acts were done or omitted. But what a defendant does or fails to do may indicate intent or lack of intent to commit the particular offense charged.

"You are entitled to consider in that regard, members of the jury, the evidence in the case, all of the testimony and the stipulation. In other words, you may properly consider all the facts and circumstances properly before you which may aid determination of state of mind."

in the Court of Appeals claims which, if correct, would preclude a new trial: he asserted with respect to both delivery and conspiracy counts that insufficient evidence was adduced at the preliminary examination and that his motions for directed verdict should have been granted because the evidence against him was insufficient to establish his guilt beyond a reasonable doubt. See *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115, 119-120; 215 NW2d 145 (1974), and *Burks v United States,* 437 US 1; 98 S Ct 2141; 57 L Ed 2d 1 (1978). We therefore remand his case to the Court of Appeals for consideration of the foregoing claims of error prior to any new trial.

We repeat that use of the instructions disapproved in this case should be immediately discontinued.

The decision of the Court of Appeals is reversed in part and affirmed in part, and both defendants' cases are remanded to the Court of Appeals for further proceedings as stated in this opinion.

COLEMAN, C.J., and KAVANAGH, LEVIN, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred with RYAN, J.

WILLIAMS, J. This case involves whether there is reversible error after balancing jury instructions in their entirety with isolated instructional language that may in itself be incorrect.

The complained-of language for the most part has been in use for more than half a century and is from a common Michigan text and form book. Recent Michigan and Federal cases, stemming from a similar history, have challenged this language, with the courts sometimes affirming and sometimes reversing. Whether affirming or reversing, there is a common thread in the opinions—the

jury instructions must be viewed and approved or disapproved in their entirety; and in the future the complained-of language should not be used. We agree.

The alleged errors, none of which was objected to at trial, are (1) the phrase "unless the testimony satisfies you of something else" (2) the use of the "law presumes" and (3) the sentence stating that "wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent". The Court of Appeals reversed on the basis that the first phrase shifted the burden of proof and the second phrase eliminated one of the elements of the crime from the jury's consideration. The third objection was not raised in the Court of Appeals nor was it mentioned in the Court's opinion.

Largely because the Court of Appeals failed to consider the complained-of language as part of the jury instructions in their entirety, we reverse that Court's finding that the jury instructions were reversibly erroneous, and remand this case to the Court of Appeals for consideration of the other issues raised there by defendants and not considered in that Court's opinion.

## I. FACTS

Defendants, Wright and Perez, were charged with one count of conspiracy to deliver heroin, MCL 750.157a; MSA 28.354(1). Defendant Wright was charged with three counts of delivery of heroin MCL 335.341(1)(a); MSA 18.1070(41)(1)(a). Defendant Perez was charged with one count of delivery of heroin MCL 335.341(1)(a); MSA 18.1070(41)(1)(a). The defendants pled not guilty and were jointly tried with another codefendant.

The trial judge correctly instructed the jury on:

1. The fact finding duty of the jury.
2. The elements of conspiracy.
3. The elements of delivery.
4. The burden of proof.
5. The presumption of innocence.
6. Reasonable doubt.
7. Criminal intent.
8. Aiding and abetting.

The trial judge's particular instructions on the intent necessary in the conspiracy count follow:

"You must be satisfied beyond a reasonable doubt that there was a common intent or a common intention to enter into the agreement to commit the crime of delivery of heroin. However, the formation and the existence of that intent may be inferred from the circumstances and the conduct of the parties.

"Now since we are talking here about intent, and since intent is an essential element and you must find it beyond a reasonable doubt, let me add to what I've told you concerning intent.

"Criminal intent—and that's what we are talking about—as used in this information and in the statute, means an intention in the mind of the defendant at the time of the commission of an act to violate the criminal law by the commission of that act. In other words, criminal intent means the intention to commit a crime at the time an act is committed.

"The question of intent is one that is hard to establish directly, because grown persons do not always disclose the object they have in view in any acts in which they may indulge. And you as jurors will have to gather the intent of the individual from the character of the act, from the circumstances surrounding it, and from conduct of a like character which may appear as tending to aid you in finding and discovering his or her intent.

"But in connection with all this, [1] *unless the testi-*

*mony satisfies you of something else,* you are warranted
in holding a party responsible for the natural, the
probable, and the legitimate consequences of his or her
acts. The intent may be presumed from the doing of a
wrongful or a fraudulent or an illegal act. But this
inference or this presumption is not necessarily conclu-
sive.

"[2] *The law presumes that every man or woman
intends the natural, the probable, and the legitimate
consequences of his or her own willful and voluntary
acts.* [3] *And wrongful acts knowingly or intentionally
committed can neither be justified nor excused on the
ground of innocent intent."* (Emphasis and numbers
added.)

There were no objections to this part of the
instructions as given.[1] However, on motion for new
trial after the verdict, which was denied, it was
argued that there was prejudicial error in the
charge relative to the presumption of intending
the natural consequences of one's acts, in the
clause "unless the testimony satisfies you of some-
thing else", and in the sentence, "[a] wrongful act
knowingly or intentionally committed can neither
be justified nor excused on the ground of innocent
intent".

Both defendants were convicted on the conspir-
acy count. Perez was convicted of one count of
delivery of heroin, and Wright of three counts of
delivery of heroin.

The Court of Appeals quoted the last three of
the six paragraphs of the instructions on intent set
out above. 78 Mich App 246, 247-248; 259 NW2d
443 (1977). The Court of Appeals emphasized the

---

[1] Previously the court had been asked to include in a requested
instruction the italicized words in the sentence below:

"However, the formation and existence of that intent may be
inferred from the circumstances and conduct of the parties *but only if
there is no other reasonable explanation."*

The court properly refused to include the italicized clause.

[1] "unless" clause in the next to last paragraph and the [2] first sentence in the last paragraph.

The Court intimated that the "unless" clause shifted the burden of proof and violated the presumption of innocence and that the "law presumes" sentence "may have effectively induced some of the jurors to believe that, as a matter of law, defendants had the intent requisite for the crime charged", even though the trial court stated that the presumption was subsequently characterized as "not necessarily conclusive". 78 Mich App 246, 248-249. On the basis of these conclusions the Court of Appeals reversed and remanded for new trial, without deciding other issues raised by defendants.

## II. DEFENDANTS' ARGUMENT

Defendants argued *re* the three above numbered points:

(1) The instruction impermissibly shifted the burden of proof from the prosecutor to defendants and it violated defendants' right to presumption of innocence and due process.

(2) Specific intent may never be presumed.

(3) *People v Holcomb,* 395 Mich 326; 235 NW2d 343 (1975), is dispositive. *Holcomb* said such an instruction "tended to negate the intent element."

## III. ORIGIN AND HISTORY OF THE INSTRUCTION

In the instant case, the complained-of two paragraphs apparently were adopted from an outmoded textbook.[2] The textbook in turn relied for

---

[2] 2 Gillespie, Michigan Criminal Law and Procedure (1953, 2d ed), § 906, Form 337, pp 1243-1244. See *People v Holcomb,* 395 Mich 326, 334, fn 6; 235 NW2d 343 (1975).

most of its language on a 1908 case in the Federal
Third Circuit Court of Appeals, *Cook v United
States,* 159 F 919 (CA 3, 1908). That court found
the following language unobjectionable:

"As I have said before, the question of intent is one
that is hard to establish directly, because grown persons
do not always disclose the object they have in view in
any acts in which they may indulge, and you have to
gather the intent from the character of the act, the
circumstances surrounding it, and from conduct of a
like character which may appear as tending to aid you
in finding and discovering it. But in connection with all
this, unless the testimony satisfies you of something
else, you are warranted in holding a party responsible
for the natural and probable and legitimate conse-
quences of his act. I have said that is what is presumed
in every case a man means."

The *Cook* instruction was incorporated in Fed-
eral cases[3] and in a Michigan[4] procedural text and
form book. The *Cook* instruction apparently en-
joyed accepted usage until fairly recently.

In the 1970's, the Michigan Court of Appeals has
considered the *Cook* instruction critically. *People v
Jordan,* 51 Mich App 710; 216 NW2d 71 (1974),
found reversible error. *People v Adams,* 48 Mich
App 595, 601-603; 210 NW2d 888 (1973), and *Peo-
ple v Smith,* 67 Mich App 145; 240 NW2d 475
(1976) (by a split Court), accepted the *Cook* instruc-
tions.

Likewise in the Federal courts, the *Cook* instruc-
tion has been considered critically. Three circuits,
2, 5, and 8, have found the use of this instruction

---

[3] *United States v Diggs,* 527 F2d 509, 514 (CA 8, 1975); *United
States v Chiantese,* 560 F2d 1244, 1249 (CA 5, 1977).

[4] Footnote 2 *supra.*

reversible error.[5] Five circuits, 3, 4, 6, 9, and 10, disapproved the language but have not found its use reversible error.[6]

## IV. CONTROLLING RULE OF LAW

The controlling rule of law in these cases is that the instructions be reviewed in their entirety to determine whether the defendant received a fair trial. *People v Adams, supra; People v Jordan, supra; People v Smith, supra,* and also *United States v Garrett,* 574 F2d 778 (CA 3, 1978), *United States v Wilkins,* 385 F2d 465 (CA 4, 1967), *United States v Woodring,* 464 F2d 1248 (CA 10, 1972). The Fifth Circuit in *United States v Chiantese,* 560 F2d 1244 (CA 5, 1977), found reversible error in the *Cook* instructions but nonetheless said:

"If, despite our action today, the error should recur, the weighing of its harm to the accused shall remain a judicial matter to be resolved in the context of each case where it occurs." 560 F2d 1244, 1255.

This is consistent with the general rule in Michigan which is that we review jury instructions in their entirety to determine whether the defendant received a fair trial. In other words, jury instructions have been reviewed as a whole and not as isolated sentences. In *People v Dye,* 356 Mich 271; 96 NW2d 788 (1959), we said:

"Appellant further claims that the court erred in its

---

[5] *United States v Robinson,* 545 F2d 301 (CA 2, 1976); *Mann v United States,* 319 F2d 404 (CA 5, 1963); *United States v Chiantese,* 560 F2d 1244 (CA 5, 1977); *United States v Diggs,* 527 F2d 509 (CA 8, 1975).

[6] *United States v Garrett,* 574 F2d 778 (CA 3, 1978); *United States v Wilkins,* 385 F2d 465 (CA 4, 1967); *United States v Smith,* 584 F2d 759 (CA 6, 1978); *Cohen v United States,* 378 F2d 751 (CA 9, 1967); *United States v Woodring,* 464 F2d 1248 (CA 10, 1972).

charge to the jury. To sustain that allegation he has extracted several short excerpts from the entire context of the charge and discussed their claimed inadequacies at great length. Jury instructions in a criminal case, however, as well as in civil cases, must be read in their entirety." 356 Mich 271, 279.

In *People v Dupie,* 395 Mich 483; 236 NW2d 494 (1975), the defendant alleged that the instruction failed to "adequately instruct on the specific intent required to be guilty of unarmed robbery". 395 Mich 483, 487. We concluded that:

"Our responsibility as a reviewing court is limited to determining whether a defendant received a fair trial.

"The charge to the jury must be considered in its entirety, and

" '[w]here the charge of the judge to which exception is taken is not strictly correct, but the court can clearly see that the jury could not have been misled by it, to the injury of the party excepting, a new trial will not be granted for that error.' *People v Scott* (syllabus), 6 Mich 287 (1859)." 395 Mich 483, 488-489.

## V. GENERAL TENOR OF INSTRUCTIONS IN INSTANT CASE

Let us examine the general tenor of the jury instructions. About four transcript pages before the jury instructions on intent quoted above, the trial judge had this to say about the burden of proof and the presumption of innocence:

"Now also at the beginning I told you generally about certain basic principles of our law—presumption of innocence, proof beyond a reasonable doubt, burden of proof. * * *

"*No defendant has an obligation to prove anything. The burden of proof rests with the prosecution. They*

are the ones who made the charge; and the law says
'It's up to you to prove it.' Secondly, the law also says,
*'You must prove your charge beyond* a reasonable
doubt.'

"*A defendant, then, is presumed to be innocent.* And
that presumption rests with him or her throughout the
trial, throughout your deliberations in your jury room,
until you and each one of you individually is satisfied
beyond a reasonable doubt that that particular defen-
dant is guilty. Not until then does he or she lose the
protection of the presumption of innocence.

"Now let me share with you a definition of presump-
tion of innocence that has been approved by our Michi-
gan Supreme Court.

"Now members of the jury, the court has said to you
that each and every person charged with a crime is
presumed to be innocent until he is proved guilty
beyond a reasonable doubt. *That presumption of inno-
cence attaches to the defendant at the beginning of the
trial, lasts with him or her during and throughout the
trial* and throughout your deliberations in the jury
room, until you and each of you are satisfied beyond a
reasonable doubt of that defendant's guilt." (Emphasis
added.)

The trial court then went on in the next para-
graph to emphasize that:

"The court has said to you that the state is required
to prove to you each and every element of the offense
beyond a reasonable doubt in order to sustain a convic-
tion."

Two pages before the complained-of paragraph,
the trial judge in reference to the specific element
in a conspiracy emphasized again that the prosecu-
tion must prove each and every element of the
crime beyond a reasonable doubt:

"To establish this charge of conspiracy, then, the
prosecution must prove each of the following elements

with respect to each defendant, and the *prosecution must prove each of these elements beyond a reasonable doubt:*

\* \* \*

"*The second element is that the particular defendant specifically intended to become a part of that agreement* and to insist—or rather, to assist in the carrying out of the agreement to deliver heroin." (Emphasis added.)

Four paragraphs before the complained-of language, the instructions include the following language:

"*You must be satisfied beyond a reasonable doubt that there was a common intent or a common intention to enter into the agreement to commit the crime of delivery of heroin. However, the formation and existence of that intent may be inferred from the circumstances and the conduct of the parties.*" (Emphasis added.)

In the paragraph before the complained-of language, the instructions include the following language:

"The question of intent is one that is hard to establish directly, because grown persons do not always disclose the object they have in view in any acts in which they may indulge. *And you as jurors will have to gather the intent of the individual from the character of the act, from conduct of a like character which may appear as tending to aid you in finding and discovering his or her intent.*" (Emphasis added.)

Six paragraphs after the complained-of language, the instructions include the following:

"that he *intended* to commit or to assist in committing the crime of delivery of heroin." (Emphasis added.)

Ten paragraphs later the instructions on delivery include:

"Delivery, then, requires proof that the person making the delivery *knew* that he was delivering heroin and that he was fully conscious and *intended* to do so at the time the delivery was made." (Emphasis added.)

In review, the general thrust of these instructions is certainly correct, clear, positive and strong. Let us sum them up—

1. "No defendant has an obligation to prove anything."

2. "A defendant, then, is presumed to be innocent."

3. "That presumption of innocence attaches to the defendant at the beginning of the trial, lasts with him or her during and throughout the trial."

4. "The burden of proof rests with the prosecution."

5. "You [the prosecutor] must prove your charge beyond a reasonable doubt."

6. "[T]he state is required to prove to you [the jury] each and every element of the offense beyond a reasonable doubt."

7. "The second element is that the particular defendant specifically intended to become a part of that agreement."

8. "[T]hat he [defendant] intended to commit or to assist in committing the crime of delivery of heroin."

9. "You must be satisfied beyond a reasonable doubt that there was a common intent or a common intention to enter into the agreement to commit the crime of delivery of heroin. However, the formation and the existence of that intent may be inferred from the circumstances and the conduct of the parties."

10. "And you as jurors will have to gather the intent of the individual from the character of the act, from the circumstances surrounding it, and from conduct of a like character which may appear as tending to aid you in finding and discovering his or her intent."

## VI. BALANCING

Our ultimate responsibility is to balance the general correct, clear, positive and strong thrust of the instructions in their entirety with the complained-of language, which is enumerated and italicized in the following paragraphs:

"But in connection with all this, [1] *unless the testimony satisfies you of something else,* you are warranted in holding a party responsible for the natural, the probable, and the legitimate consequences of his or her acts. The intent may be presumed from the doing of a wrongful or a fraudulent or an illegal act. But this inference or this presumption is not necessarily conclusive.

"[2] *The law presumes that every man or woman intends the natural, the probable, and the legitimate consequences of his or her own willful and voluntary acts.*

"[3] *And wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent.*" (Emphasis and numbers added.)

### 1. "Unless"

Only if one assumes that the clause "unless the testimony satisfies you of something else" means that the defendant must provide such testimony, is the clause incorrect. There is no special warrant for that assumption as there is no reference to a defendant in the clause; the clause could apply equally in either the instance where testimony is produced by the prosecution or the instance where the defense produced no testimony at all. Speculation is unnecessary, however, in this case because the clear, positive and strong thrust of the instructions in their entirety is that "[n]o defendant has

an obligation to prove anything", and "is presumed innocent" from start to finish of the trial. At the same time "the state is required to prove * * * each and every element of the offense beyond a reasonable doubt". Consequently, the instructions in their entirety negative the possibility of an unfair trial because it is not apparent that the jury was being misled. See *United States v Garrett,* 574 F2d 778, 782 (CA 3, 1978); *United States v Wilkins,* 385 F2d 465, 473 (CA 4, 1967); *United States v Chiantese,* 560 F2d 1244, 1249 (CA 5, 1977).

### 2. *"Presume"*

The use of "the law presumes" language is admittedly clumsy and, in isolation, objectionable.[7]

---

[7] The United States Supreme Court in a recent case held that an instruction "the law presumes that a person intends the ordinary consequences of his voluntary acts" violates the Fourteenth Amendment's requirement that the state prove every element of a criminal case beyond a reasonable doubt. *Sandstrom v Montana,* 442 US 510; 99 S Ct 2450; 61 L Ed 2d 39 (1979). That case is distinguishable from the instant case in at least two particulars. First, the Court found no modifying language in the instructions and said:

"Sandstrom's jurors were told that 'the law presumes that a person intends the ordinary consequences of his voluntary acts.' They were not told that they had a choice, or that they might infer that conclusion; they were only told that the law presumed it. * * *" 442 US 510, 515.

Second, the state of Montana urged that the instruction "[a]t most, * * * placed a *burden of production* on the petitioner". *Id.,* p 515, citing a respondent's brief.

In the instant case, of course, as to the first particular we have laid out in detail and with reference to the specifics that the jury was strongly told (in the jury instructions), "No defendant has an obligation to prove anything." And "the state is required to prove * * * each and every element * * * beyond a reasonable doubt". The jury was told the "intent may be inferred * * *."

As to the second particular, it is, of course, the position of this Court that the defendant has no "burden of production". The prosecution must prove everything.

Finally, the Court's opinion referred to *United States v Chiantese,* 560 F2d 1244 (CA 5, 1977), as ordering its district courts to delete similar instructions in the future. We, of course, also proscribe such instructions in the future. But the reader is referred back to Part IV, where we quote *Chiantese* as follows:

"If, despite our action, today, the error should recur, the weighing

It is improved by the preceding sentence that "this presumption is not necessarily conclusive" and the fact that common usage employs "presumption" and "inference" almost interchangeably. However, the clear, positive and strong thrust of the instructions in their entirety stresses that the prosecutor must prove each and every element of the offense beyond a reasonable doubt and they correctly say that "the intent may be inferred from the circumstances and the conduct of the parties". The instructions also state the jurors "will have to gather the intent of the individual from the character of the act." Reading the instructions in their entirety, we find that the jury should not have been misled.

### 3. "Innocent Intent"

The injection of the sentence "And wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent" is certainly confusing but not per se erroneous. It has no connection with the rest of the paragraph which deals with inferences or guilt by association. Furthermore, it does not appear to deal in any way with the realities of the case as no defendant admitted the commission of a wrongful act but claimed innocent intent.

Like the other claimed errors, this one was not objected to at trial, but beyond that the argument was not raised at the Court of Appeals. Despite this, as the language comes within the general sweep of the matter under consideration, it will be addressed.

The sentence seems to be internally self-contradicting and perhaps meaningless. How can there be innocent intent in a wrongful act knowingly

---

of its harm to the accused shall remain a judicial matter to be resolved in the context of each case where it occurs."

and intentionally committed? Or putting it another way, how can an act knowingly and intentionally committed with innocent intent be a wrongful act?

Under these conditions it is difficult to visualize any direct negative impact resulting from this language, although in *People v Holcomb,* 395 Mich 326, 333; 235 NW2d 343 (1975), this Court observed, but not decisionally, that "[t]he instruction given tended to negate the intent element".

With the general thrust of the instructions in their entirety in the instant case, any tendency "to negate the intent element" is more than overcome. The jury was instructed that "the state is required to prove to you each and every element of the offense beyond a reasonable doubt" and that in the conspiracy count "[t]he second element is that the particular defendant specifically intended to become a part of that agreement". Furthermore, the latter point was twice repeated. As to the intent to deliver, the jury was told the state must prove "that he [the defendant] intended to commit or to assist in committing the crime of delivery of heroin". The instructions also included the requirement of "proof that the person making the delivery knew that he was delivering heroin and that he was fully conscious and intended to do so at the time the delivery was made".

While we agree with the order in *Holcomb* that "that portion of the instruction on intent should not be given" again, 395 Mich 326, 334, we do not believe *Holcomb* requires the finding of a reversible error in this case for the following reasons:

(1) As above indicated, the instructions in their entirety in this case remove the possibility the jury would feel the intent element was negated.

(2) *Holcomb* did not hold this portion of the

instruction per se reversible error. Rather it ordered this portion of the instruction not to be given on remand. If we were remanding for retrial, we would do the same.

(3) *Holcomb* was decided after this case was tried, and,

(4) *Holcomb* was decided on another issue, so is not controlling precedent for this case.

Summing up, then, the general thrust of the instructions in this case was correct, clear, positive and strong. While the complained-of language certainly was not of the best and subject to possible misinterpretation, when considered in conjunction with the strong, correct and unequivocal thrust of the instructions in their entirety, it would not be reasonable to anticipate that the jury would be misled and the defendant denied a fair trial.

## VII. CONCLUSION

1. The instructions, viewed in their entirety, adequately instruct the jury and do not deny a fair trial.

2. The Court of Appeals is reversed as to the complained-of instructions and the matter remanded to it to consider issues raised before that court but not considered in its opinion.

3. The bench and bar are strongly urged to recognize that the words and phrases herein complained of are suspect buzz words signaling probable exception and appeal. They spell wasted time, trouble for everyone and the delay of justice. Do not use them. *Verbum sapienti sat est.*